821 F.2d 980
 18 Soc.Sec.Rep.Ser. 153
 G. Michael SMITH, on behalf of himself and all others
similarly situated; Sharon Dehaven, on behalf of
herself and all others similarly
situated, Plaintiffs-Appellants,
v.
Phillip J. KIRK, Jr., in his official capacity as Secretary
of the North Carolina Department of Human Resources; Claude
A. Myer, in his official capacity as Director of the North
Carolina Division of Vocational Rehabilitation Services,
Defendants-Appellees.
 No. 86-3587.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1987.
Decided June 24, 1987.
Rehearing and Rehearing En Banc Denied Aug. 3, 1987.
 
 M. Travis Payne, Raleigh, N.C., (Edelstein and Payne, on brief), for plaintiffs-appellants.
 Ann Reed, Special Deputy Atty. Gen., Raleigh, N.C., (Lacy H. Thornburg, Atty. Gen., on brief), for defendants-appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 G. Michael Smith and Sharon DeHaven (hereafter Smith) appeal from the district court's partial dismissal[1] of their 42 U.S.C. Sec. 1983 class action[2] against Phillip J. Kirk, Secretary of the North Carolina Department of Human Resources, and Claude A. Myer, Director of the North Carolina Division of Vocational Rehabilitation Services (DVR). The DVR denied Smith's application for a specially equipped van[3] and DeHaven's request for hand controls on her car and for a light-weight wheelchair. These two handicapped plaintiffs contend that the defendants (hereafter the State) violated the Social Security Act, 42 U.S.C. Sec. 422, by applying an economic needs test in evaluating their requests. They argue that applying an economic needs test to disabled persons requesting vocational rehabilitation services rather than simply considering whether the rehabilitation would be successful violates the statute.
 
 
 2
 Smith bases his Sec. 1983 action on both statutory and constitutional grounds. He contends that the State's economic needs test violates a Social Security Administration regulation promulgated pursuant to 42 U.S.C. Sec. 422. He also asserts that use of the test deprives disabled persons of property without due process of law and violates the equal protection clause of the fourteenth amendment. In dismissing all of Smith's Sec. 1983 claims based on the Social Security Act, the district court reasoned that 42 U.S.C. Sec. 422 does not create an interest or entitlement upon which such a suit can be maintained. We agree and affirm.
 
 I.
 
 3
 Section 1983 actions, of course, are available to redress violations of federal statutes by state agents, Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), except where 1) Congress has foreclosed enforcement by a Sec. 1983 action in the statute itself or 2) where the statute does not create enforceable rights, privileges, or immunities within the meaning of Sec. 1983. Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Congressional intent is the "key to the inquiry" of whether a statute creates enforceable rights. Sea Clammers, 453 U.S. at 13, 101 S.Ct. at 1537-1538. In determining Congress' intent, we look to the language of the statute. See Wright v. City of Roanoke Redevelopment & Housing Authority, --- U.S. ---- ----, 107 S.Ct. 766, 774, 93 L.Ed.2d 781, 792 (1987); Pennhurst, 451 U.S. at 18, 101 S.Ct. at 1540.
 
 
 4
 Section 422, the statute governing the issues we consider, provides in pertinent part:
 
 
 5
 (a) Referral for rehabilitation services
 
 
 6
 It is declared to be the policy of the Congress that disabled individuals ... shall be promptly referred to the State agency or agencies administering or supervising the administration of the State plan approved under Title I of the Rehabilitation Act of 1973 [29 U.S.C. Sec. 720 et seq.] for necessary vocational rehabilitation services, to the end that the maximum number of such individuals may be rehabilitated into productive activity.
 
 
 7
 ....
 
 
 8
 (d) Costs of rehabilitation services from Trust Funds
 
 
 9
 (1) For purposes of making vocational rehabilitation services more readily available to disabled individuals who are--
 
 
 10
 (A) entitled to insurance disability benefits under section 423 of this title ...
 
 
 11
 to the end that savings will accrue to the Trust Funds as a result of rehabilitating such individuals, there are authorized to be transferred from the Federal Old-Age and Survivors Insurance Trust Fund and the Federal Disability Insurance Trust Fund each fiscal year such sums as may be necessary to enable the Secretary to reimburse the State for the reasonable and necessary costs of vocational rehabilitation services approved under title I of the Rehabilitation Act of 1973, (i) in cases where the furnishing of such services results in the performance by such individuals of substantial gainful activity for a continuous period of nine months.... The determination that the vocational rehabilitation services contributed to the successful return of an individual to substantial gainful activity, ... and the determination of the amount of costs to be reimbursed under this subsection shall be made by the Commissioner of Social Security in accordance with criteria formulated by him.
 
 
 12
 (2) In the case of any State which is unwilling to participate or does not have a plan which meets the requirements of paragraph (1), the Commissioner of Social Security may provide such services in such State by agreement or contract with other public or private agencies, organizations, institutions, or individuals....
 
 
 13
 Subsection (a) of the statute contains the only reference to benefits to be received directly by individuals. It provides that "[i]t is ... the policy of the Congress that disabled individuals ... shall be promptly referred to the State agency or agencies administering or supervising the administration of the State plan approved under Title I of the Rehabilitation Act of 1973 for necessary vocational rehabilitation services...." 42 U.S.C. Sec. 422(a). As even Smith concedes, this subsection creates no entitlement to those services, it simply announces a broad policy by which social security disability beneficiaries are to be referred to the State agency for rehabilitation services.
 
 
 14
 The only other part of Sec. 422 that could conceivably be considered as creating an entitlement is subsection (d). An examination of that subsection, however, reveals that it neither directly benefits individuals nor is written in mandatory terms. It is simply a funding provision. Subsection (d) authorizes the transfer of social security Trust Funds "as may be necessary to enable the Secretary to reimburse the State" for the costs of providing rehabilitation services. 42 U.S.C. Sec. 422(d)(1). Its direct benefits flow to the states, not to disabled individuals. Moreover, it does not mandate that states establish a separate program to provide rehabilitation services to disabled persons receiving social security benefits, it simply reimburses a state for services it provides.
 
 
 15
 Further, the transfer of funds to the states under subsection (d) is left to the Secretary's discretion. Such reimbursement is conditioned on successful rehabilitation, which is defined as "the performance by [a beneficiary] of substantial gainful activity for a continuous period of nine months." 42 U.S.C. Sec. 422(d)(1)(D)(i). The Commissioner of Social Security has the authority to determine whether the rehabilitation was successful and, if so, how much to reimburse the State. Id. He can, of course, formulate criteria to assist him in making these determinations. The stated purpose of providing funding through the social security Trust Funds is to make "vocational rehabilitation services more readily available to disabled individuals who [are entitled to receive social security disability benefits] ... to the end that savings will accrue to the Trust Funds...." 42 U.S.C. Sec. 422(d)(1) (emphasis added). Congress, of course, was concerned that social security disability beneficiaries receive vocational rehabilitation services and attempted to encourage states to provide those services by reimbursing the states through the social security Trust Funds for services that resulted in successful rehabilitation. A primary concern in creating the incentive of funding the services, however, was to achieve a net gain in the Trust Funds. An incentive for states to provide vocational rehabilitation services simply does not create an entitlement to those services. The fact that Congress provided funding only for rehabilitation services that produced successful rehabilitation and not carte blanche funding indicates that it did not intend to create an entitlement to rehabilitation services. It shows instead its concern that disability payments be controlled.
 
 
 16
 Smith nevertheless points to mandatory language in regulations promulgated under Sec. 422 as supporting his contention that Sec. 422 creates an entitlement. See 34 C.F.R. Sec. 361.110 et seq.[4] An administrative regulation, however, cannot create an enforceable Sec. 1983 interest not already implicit in the enforcing statute. The Supreme Court has never held that one could--to the contrary, members of the Court have expressed doubt that "administrative regulations alone could create such a right." Wright, --- U.S. at ----, 107 S.Ct. at 778, 93 L.Ed.2d at 797 (O'Connor, J., dissenting) (emphasis in original).
 
 II.
 
 17
 Smith also contends that the economic needs test deprives disabled persons of a property interest without due process of law. It is true that a statute can create property interests, but
 
 
 18
 [t]o have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 19
 Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To resolve whether Smith has an entitlement in the due process context, we engage in the same analysis used to resolve Smith's Sec. 1983 statutory claim. Since we are persuaded that Sec. 422 creates no entitlement to rehabilitation services, we likewise conclude that Smith has no property interest protected under the due process clause of the fourteenth amendment.
 
 
 20
 Finally, there is no merit to Smith's equal protection claim. Although the issue was raised on appeal, both parties discussed it in only a cursory manner. Assuming Smith has identified a class that was treated differently based on lack of financial need, the classification bears an obvious rational relationship to a legitimate purpose of the State--conserving money spent on vocational rehabilitation services. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
 
 
 21
 For the above reasons, the order of the district court dismissing Sec. 1983 Smith's claims based on the Social Security Act is affirmed.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The complaint alleged violations of both the Social Security Act, 42 U.S.C. Sec. 422, and the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq., as well as constitutional violations resulting from the statutory violations. The district court dismissed only those portions of the complaint based on the Social Security Act. The court certified its order as suitable for appeal under 28 U.S.C. Sec. 1292(b) and we granted the plaintiffs' petition for interlocutory review. We do not address the district court's refusal to dismiss the claims based on alleged violations of the Rehabilitation Act
 
 
 [2]
 Smith seeks to certify a class consisting of two subclasses of disabled persons in need of vocational rehabilitation services: 1) those who are denied services under the Rehabilitation Act because they do not meet an economic needs test; and 2) those who are denied benefits funded by the Social Security Act, 42 U.S.C. Sec. 422(d)(1), because they do not meet an economic needs test. After the suit was filed, the district court granted DeHaven's motion to intervene as a named plaintiff and representative of the class
 
 
 [3]
 The DVR denied Smith's request in 1981 that he be furnished a specially equipped van to enable him to obtain and retain employment specifically because he failed an economic needs test. At that time, Smith received social security disability benefits. The benefits were terminated in 1983 after Smith obtained full-time employment, however, the termination apparently is still on appeal
 
 
 [4]
 These regulations no longer appear in the Code of Federal Regulations. They were never formally revoked or withdrawn, however, and the district court adopted the magistrate's conclusion that they remain in force. For the purposes of this opinion, we assume, without deciding, that the regulations remain in force
 
 
 [34]
 C.F.R. Sec. 361.114(c) provides in pertinent part:
 The State plan shall provide that any disability beneficiary who meets the other requirements for selection for vocational rehabilitation services shall be provided with authorized services without regard to ... [n]eed for financial assistance.
 See 40 Fed.Reg. 54715 (1975).