John SMITH, Plaintiff,

v.

Charles M. PALMER, in his official capacity as the Director of the Iowa Department of Human Services, Defendant.

No. C97–3055–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 13, 1998.

Thomas A. Krause of Max Schott and Associates, Des Moines, IA, for Plaintiff.

Daniel W. Hart, Asst. Atty. Gen., Des Moines, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION AND BACKGROUND ................................... 957

II.  FINDING OF FACTS ............................................... 958
     A.  Uncontested Facts ........................................ 958
     B.  Contested Facts .......................................... 959

III. LEGAL ANALYSIS ................................................ 959
     A.  Standards For Summary Judgment ........................... 959
     B.  Background On The Federal Medicaid Statute ............... 960
     C.  Test For Determining The Creation Of A Federal Right ..... 961
     D.  The Creation Of Federal Rights Via Implementing Regulations .......... 962
     E.  Analysis Of Specific Provisions Of The Medicaid Statute And Regula-
         tion ..................................................... 963
         1.  42 U.S.C. § 1396a(a)(17) ............................. 963
         2.  42 C.F.R. § 440.230 ................................. 964
     F.  Analysis Of The Merits Of Plaintiff Smith's § 1983 Claims ............... 966
     G.  Analysis Of The Merits Of Plaintiff Smith's Due Process Claim .......... 967

IV.  CONCLUSION .................................................... 968

This case reminds the court of something the New York Yankees' Hall of Fame catcher Lawrence Peter "Yogi" Berra once said, "It's deja vu all over again". Eighteen years ago, in a case from this district, the Eighth Circuit Court of Appeals held that the State of Iowa's policy of denying Medicaid benefits for sex reassignment surgery constituted an arbitrary denial of benefits based solely on diagnosis, type of illness or condition, and was inconsistent with the objectives of the Medicaid statute. *Pinneke v. Preisser,* 623 F.2d 546, 549 (8th Cir.1980). Following the decision in *Pinneke,* the State of Iowa, after conducting a literature review, amended its administrative rules governing Medicaid payments to specifically exclude sex reassignment surgery. This suit is brought by a Medicaid claimant who seeks sex reassignment surgery as a Medicaid benefit. Thus, a court in this district is again confronted with the question of whether the State of Iowa's policy of denying Medicaid benefits for sex reassignment surgery is permitted under Medicaid.

### I. INTRODUCTION AND BACKGROUND

On May 17, 1997, plaintiff John Smith filed his complaint pursuant to 42 U.S.C. §§ 1983, alleging violations of the federal Medicaid

statute, 42 U.S.C. § 1396 *et seq.,* and of his constitutional rights. Smith's claims arise from the Iowa Department of Human Services' denial of sex reassignment surgery for Smith.[1] Specifically, in Count I, Smith alleges that the denial of sex reassignment surgery violates the federal Medicaid statute and its attendant regulations. In Count II, Smith alleges that the denial of sex reassignment surgery is violative of Smith's right to due process under the Fourteenth Amendment to the United States Constitution.

On June 1, 1998, defendant Charles M. Palmer filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his motion for summary judgment, Palmer contends that Smith's allegation of violations of the federal Medicaid statute and its regulations fails to state a cause of action under 18 U.S.C. § 1983. Alternatively, Palmer asserts that, on the undisputed facts presently before the court, such a claim is without merit. On Smith's due process violation claim, while Palmer concedes that Smith has stated a cause of action pursuant to § 1983, Palmer argues that on the undisputed facts such a claim is without merit. On September 15, 1998, after obtaining additional time to respond, Smith filed his resistance to defendant Palmer's motion for summary judgment.[2] Before turning to consider the

---

1. Plaintiff John Smith was granted permission to pursue this litigation using a male pseudonym. Smith uses the male pronoun to refer to himself, despite the fact that he is still biologically female. The court will respect that preference in this opinion.

2. On September 12, 1998, defendant Palmer sent the court, by facsimile, a courtesy copy of his Motion For Leave To Supplement Defendant's Motion For Summary Judgment, Supplemental Brief In Support of Defendant's Motion For Summary Judgment, and Supplemental State-

merits of defendant Palmer's motion for summary judgment, the court will first set out the uncontested, as well as contested facts, underlying this litigation.

## II. FINDINGS OF FACT

### A. Uncontested Facts

The record reveals that the following facts are undisputed. The State of Iowa participates in the joint federal-state Medicaid program under Title XIX of the Social Security Act pursuant to a state plan that has been approved by the Secretary of the United States Department of Health and Human Services. Defendant Charles M. Palmer, the Director of the Iowa Department of Human Services, administers the Iowa Medicaid program. Plaintiff John Smith receives Iowa Medicaid benefits as a disabled individual under the "medical needy" coverage group.

Plaintiff Smith has requested payment for sex reassignment surgery from the Iowa Medicaid program. Sex reassignment surgery involves the surgical removal of sexual and reproductive organs of the individual and a series of cosmetic, reconstructive, or plastic surgery procedures to give the individual the appearance of a person of the opposite gender. Plaintiff Smith seeks female to male reassignment surgery.

Sex reassignment surgery involves inpatient hospital services, physicians' services, and prescriptions. Female to male sex reassignment surgery may also involve the use of prosthetic testicles and a penile implant. The number of candidates for sex reassignment surgery in the general population is one out of 50,000, or .002 percent.

The general categories of medical services covered by the Iowa Medicaid program and provided to individuals in the medically needy coverage group include inpatient hospital services, physician's services, prescribed drugs, and prosthetic devices. Smith's requests for payment of sex reassignment surgery, however, have been denied pursuant to Iowa's state plan for medical assistance and Iowa state administrative rules governing the

Iowa Medicaid program. Iowa's state plan for medical assistance provides that cosmetic, reconstructive, or plastic surgery is not covered, but exceptions are made for the correction of congenital anomalies, restoration of body form following accidental injury, or revision of disfiguring and extensive scars from neoplastic surgery. Iowa's state plan was last approved by the United States Department of Health and Human Services on January 24, 1994.

The Iowa administrative rules governing the Iowa Medicaid program excludes sex reassignment surgery as part of a general rule excluding cosmetic, reconstructive, or plastic surgery performed primarily for a psychological purpose that does not correct or materially improve bodily functions. In general, cosmetic, reconstructive, or plastic surgery is not an appropriate treatment for psychiatric disorders. The exclusion of sex reassignment surgery was added to the Iowa Administrative Rules by an amendment in 1994. On November 9, 1994, the Iowa Department of Human Services published a notice of intended action regarding the proposed amendment and solicited public comment on it. This notice contained the Iowa Department of Human Services' reasons for proposing to exclude sex reassignment surgery from the coverage under the Iowa Medicaid program. The notice indicated that the Iowa Department of Human Services had a literature review conducted for it by the Iowa Foundation for Medical Care. XVII Iowa Admin. Bull. 730 (Nov. 9, 1994). The notice indicates that the review found that:

*Continuing controversy regarding the definition, diagnosis, cause, and treatment of gender dysphoria, particularly regarding sex reassignment surgery.

*Various treatment options, including psychotropic medication and psychotherapy.

*Lack of a consensus opinion that sex reassignment surgery is an appropriate treatment.

ment Of Undisputed Facts In Support of Defendant's Motion For Summary Judgment. As of this date, those documents have not yet been filed with the Clerk of Court. Although the court does not accept filings via facsimile, see N.D.

Iowa LR 5.1(e), the court has nonetheless considered defendant Palmer's supplemental brief and statement of undisputed facts in ruling on defendant Palmer's Motion For Summary Judgment.

*A need for further study.

*Id.* at 734.

Only one formal comment was received regarding the proposed amendment. The single formal comment received came from attorney Thomas Krause, plaintiff Smith's counsel in this case. Krause opposed the proposed amendment to the Iowa Administrative Rules. On December 14, 1994, the policy making body of the Iowa Department of Human Resources, the Council on Human Services, adopted the proposed amendment to the Iowa Administrative Rules which excluded sex reassignment surgery.

### B. Contested Facts

1. Whether sex reassignment surgery is an appropriate treatment for gender dysphoria? [3]

### III. LEGAL ANALYSIS

#### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g.,* *Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa.1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-*

---

3. Gender dysphoria or transsexualism had been described as follows:

A transsexual believes that he is the victim of a biologic accident, cruelly imprisoned within a body incompatible with his real sexual identity. *Most are men who consider themselves to have* feminine gender identity and regard their genitalia and masculine features with repugnance. Their primary objective in seeking psychiatric help is not to obtain psychologic treatment but to secure surgery that will give them as close an approximation as possible to a female body. *The diagnosis is made only if the disturbance is* has been continuous (not limited to periods of stress) for at least 2 yr, is not symptomatic of another mental disorder such as schizophrenia, and is not associated with genital ambiguity or genetic abnormality. In true male transsexuals the condition begins in early childhood *with indulgence in girls' games, fantasies of being female, repugnance at the physical* changes that attend puberty, and thereafter a quest for a feminine gender identity. Many transsexuals are adept at acquiring the skills that enable them to adopt a feminine gender identity. Some patients are satisfied with being given help to achieve a more feminine appearance, *together with employment and an* identity card that enables them to work and live in society as women. Others are not content with changing their social identity but can be helped to achieve a more stable adjustment with small doses of feminizing hormones. Many transsexuals request feminizing operations in spite of the sacrifices entailed. The decision for surgery sometimes raises grave social and ethical problems. Since some follow-up studies have provided evidence that some true transsexuals achieve more happy and productive lives with the aid of surgery, it is justified in carefully selected men. After surgery, the patients need assistance with movement, gesture, and voice production. Some homosexual men, usually with serious personality problems, request reallocation surgery. The results in these patients are unsatisfactory from both a medical and social viewpoint.

MERCK MANUAL OF DIAGNOSIS AND THERAPY 1434 (14th ed.1982).

*davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394. With these standards in mind, the court turns to consideration of defendant's motion for summary judgment, commencing with a brief overview of the federal Medicaid statute.

### B. Background On The Federal Medicaid Statute

In 1965, the federal Medicaid program was created when Congress added Title XIX to the Social Security Act, 42 U.S.C. § 1396 *et seq.*, "for the purpose of providing federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Although participation in the Medicaid program is entirely voluntary, once a state elects to participate, it must comply with federal statutory and regulatory requirements. *Id.* at 301, 100 S.Ct. 2671; *Weaver v. Reagen*, 886 F.2d 194, 197

(8th Cir.1989) ("Although a state's participation [in the Medicaid program] is voluntary, once a state chooses to participate in the program it must comply with federal statutory and regulatory requirements."). Federal and state governments finance Medicaid programs jointly, but state governments actually administer the programs. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

Pursuant to Title XIX, participating states must provide financial assistance for medical services to the "categorically needy," which include the aged, blind, disabled, and needy individuals with dependent children.[4] 42 U.S.C. § 1396a(a)(10)(A); *see Beal v. Doe*, 432 U.S. 438, 440 n. 1, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). Although not required to do so, participating Medicaid states may also opt to provide medical services to the "medically needy." 42 U.S.C. § 1396a(a)(10)(C); *see Beal*, 432 U.S. at 440 n. 1, 97 S.Ct. 2366. "Medically needy" individuals are those "who do not qualify for some forms of federal assistance but who nonetheless lack the resources to obtain adequate medical care." *Hodgson v. Board of County Com'rs, County of Hennepin*, 614 F.2d 601, 606 (8th Cir.1980). Iowa participates in the Medicaid program and provides services to both the categorically needy and the medically needy. "If a State elects to include the medically needy in its Medicaid plan, it has the option of providing somewhat different coverage from that required for the categorically needy." *Harris*, 448 U.S. at 301 n. 1, 100 S.Ct. 2671 (citation omitted).

In order to be eligible to collect federal Medicaid funds, Title XIX requires participating states, such as Iowa, to submit medical assistance plans which must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396. The medical assistance plan must "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of [Title XIX]." 42 U.S.C.A.

---

**4.** The categorically needy are those entitled to assistance under four programs: Old Age Assistance, 42 U.S.C. § 301 *et seq.;* Aid to Families with Dependent Children, 42 U.S.C. § 601 *et*

*seq.;* Aid to the Blind, 42 U.S.C. § 1201 *et seq.;* and Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1351 *et seq.*

§ 1396a(a)(17); *see Beal,* 432 U.S. at 441, 97 S.Ct. 2366. "This provision has been interpreted to require that a state Medicaid plan provide treatment that is deemed 'medically necessary' in order to comport with the objectives of the Act." *Weaver,* 886 F.2d at 200 (citations omitted) (holding that "Missouri Medicaid may not deny coverage of AZT to AIDS patients who are eligible for Medicaid and whose physicians have certified that AZT is medically necessary treatment."). In addition, states which decide to provide medical services to the "medically needy" are required to provide either at least the five broad categories of medical services which are provided to the "categorically needy" or at least seven of sixteen broad categories of medical services. 42 U.S.C. § 1396a(a)(13)(C).

## C. Test For Determining The Creation Of A Federal Right

█ It is now well settled that 42 U.S.C. § 1983 provides a private right of action for violations of federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In order to assert a statutory claim under § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). The United States Supreme Court "traditionally look[s] at three factors when determining whether a particular statutory provision gives rise to a federal right." *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* (citing *Wright v. City of Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Id.* (citing *Wright,* 479 U.S. at 431–32, 107 S.Ct. 766). "Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." [5] *Id.* (citing *Wilder,* 496 U.S. at 510–11, 110 S.Ct. 2510 and *Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). This is the analysis which the court must apply to the provisions at issue in this lawsuit.

█ However, even if a plaintiff demonstrates that a given federal statute creates an individual right, such a showing gives rise only to a rebuttable presumption that the right is enforceable under § 1983. *Blessing,* 117 S.Ct. at 1359; *Doe 1–13 ex rel. Doe, Sr.*

---

5. In *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court addressed whether certain provisions contained in Title IV–D of the Social Security Act create federal rights enforceable through an action under § 1983. Title IV–D is part of the AFDC program, and provides that States, in order to qualify for federal AFDC funds, must certify that they will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV–D. The lawsuit was brought by five Arizona mothers who claimed an enforceable right to have the State's child support program achieve "substantial compliance" with the requirements of Title IV–D. The Ninth Circuit Court of Appeals found that the plaintiffs had such an enforceable right, but the Supreme Court reversed, applying the three-part test outlined above. In reversing, the Court made two pertinent observations. First, the Supreme Court excoriated the Ninth Circuit Court of Appeals for "taking a blanket approach to determining whether Title IV–D creates rights." *Id.* at 1361. The Supreme Court noted that it is "impossible to determine whether Title IV–D, as an undifferentiated whole, gives rise to undefined 'rights.'" *Id.* at 1360. Rather, the Supreme Court declared that it is incumbent upon the plaintiffs to identify with particularity the specific rights they are claiming and the particular provision of the statute at issue supporting each claimed right. *Id.* Once that is done, the analyzing court must conduct a "methodical inquiry" that asks whether each particular claim and its corresponding statutory provision satisfies the three-part test set forth in *Wright* and *Wilder.* *Id.* Second, the Supreme Court further delineated the general requirement that Congress must have intended the statutory provision at issue to benefit the plaintiffs. For example, statutory provisions "designed only to guide the State in structuring its systemwide efforts", while they "may ultimately benefit individuals who are eligible for [statutory] services", fail to give rise to enforceable rights. *Id.,* 117 S.Ct. at 1361. The Court observed that any benefit conferred by such provisions upon individuals is indirect at best and thus does not "fit [the Supreme Court's] traditional three criteria for identifying statutory rights." *Id.*

*1–13 v. Chiles,* 136 F.3d 709, 713 (11th Cir. 1998); *Holt Hauling & Warehousing, Inc. v. Port of Philadelphia,* 1998 WL 512934, at *19 n. 13 (E.D.Pa. Aug. 17, 1998); *Sandoval v. Hagan,* 7 F.Supp.2d 1234, 1252 n. 15 (M.D.Ala.1998); *Pennsylvania Food Merchants Ass'n v. Houstoun,* 999 F.Supp. 611, 619 (M.D.Pa.1998). A § 1983 enforcement action will not lie if Congress has "specifically foreclosed a remedy under § 1983." *Smith v. Robinson,* 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Holt Hauling & Warehousing, Inc.,* 1998 WL 512934, at *19 n. 13; *Sandoval,* 7 F.Supp.2d at 1252 n. 15; *Pennsylvania Food Merchants Ass'n,* 999 F.Supp. at 619. Congress may do this expressly, by prohibiting § 1983 enforceability in the terms of the statute itself, or impliedly, by creating a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing,* 117 S.Ct. at 1360 (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)); *Sandoval,* 7 F.Supp.2d at 1252 n. 13; *Pennsylvania Food Merchants Ass'n,* 999 F.Supp. at 619; *see Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Here, plaintiff Smith relies on both certain statutory provisions of the Medicaid Act and also on certain administrative regulations enacted pursuant to the Medicaid Act. His claims related to the administrative claims raise the threshold issue of whether an administrative regulation, standing alone, can create an enforceable right under § 1983, and, if not, how closely the regulation, in order to be enforceable, must be linked to a statutory provision that creates such a right. Thus, before turning to an analysis of the specific language of provisions of Title XIX and its implementing regulations, the court must determine whether federal rights may be established by Title XIX's implementing regulations.

### D. The Creation Of Federal Rights Via Implementing Regulations

The Eighth Circuit Court of Appeals has not yet determined whether violation of a federal regulation can form the basis for a § 1983 violation. Courts are split on the issue. *Compare Loschiavo v. City of Dear-*

*born,* 33 F.3d 548, 551 (6th Cir.1994) (observing that a regulation can create an enforceable right under § 1983), *cert. denied,* 513 U.S. 1150, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995); *Evelyn V. v. Kings Cty. Hosp. Ctr.,* 956 F.Supp. 288, 296 (E.D.N.Y.1997) (same); *with Harris v. James,* 127 F.3d 993, 1009 (11th Cir.1997) (holding that a regulation does not create a federal right unless it is "defines or fleshes out" the content of an enforceable right contained in a statutory provision); *Gracia v. Brownsville Hous.,* 105 F.3d 1053, 1057 (5th Cir.1997) (stating that it is not clear whether regulations can create rights enforceable under § 1983); *Smith v. Kirk,* 821 F.2d 980, 984 (4th Cir.1987) (holding that an administrative regulation cannot create an interest enforceable under § 1983 that is not already implicit in the enforcing statute); *Graus v. Kaladjian,* 2 F.Supp.2d 540, 543 (S.D.N.Y.1998) (holding that "[n]ot every rule creates a right."); *Brantley ex rel. Brantley,* 936 F.Supp. 649, 659 (D.Minn.1996) (agreeing with the Fourth Circuit Court of Appeals "that a federal regulation alone does not create a federal right for purposes of a § 1983 cause of action.").

In *Loschiavo,* the Sixth Circuit Court of Appeals held that, because federal regulations have the force of law, they may create federal rights enforceable under § 1983. *Loschiavo,* 33 F.3d at 551. In stark contrast, in *Kirk,* the Fourth Circuit Court of Appeals held that an administrative regulation cannot create an enforceable § 1983 interest not already implicit in the enforcing statute. *Kirk,* 821 F.2d at 984. In *Kirk,* plaintiffs brought suit pursuant to the Social Security Act, 42 U.S.C. § 422, claiming they were entitled to equipment for vocational rehabilitation. The Fourth Circuit Court of Appeals examined § 422 and found no entitlement to rehabilitation services and thus no enforceable right. *Id.* The Fourth Circuit Court of Appeals rejected the argument that mandatory language contained in an implementing regulation alone created a federally protected right for purposes of § 1983. *Id.* The Eleventh Circuit Court of Appeals adopted a similar view in *Harris.* There, the court concluded that rights enforceable under § 1983 are those rights created by Congress. If a statute creates no enforceable rights, then imple-

menting regulations adopted under the statute also create no rights enforceable under § 1983. *Harris,* 127 F.3d at 1009. However, if a statute creates enforceable rights, implementing regulations under that statute may further define those enforceable rights. *Id.*

■] Upon consideration of the conflicting views on this issue, the court concurs with the approach adopted by the Fourth and Eleventh Circuit Courts of Appeal and rejects the argument advanced by plaintiff Smith that mandatory language contained in an implementing regulation alone is sufficient to create a federally protected right for purposes of § 1983. *See Harris,* 127 F.3d at 1009; *Kirk,* 821 F.2d at 984. As the district court in *Graus* aptly observed:

> In this Court's view, no other result is consonant with separation of powers, for if Congress intended that only certain specific statutory provisions give rise to private enforcement actions under § 1983, *see Wilder,* 496 U.S. at 509–11, 110 S.Ct. 2510, it cannot have intended that private actions be predicated on administrative regulations not closely connected to these statutory sources of private power.

*Graus,* 2 F.Supp.2d at 543.

Therefore, keeping this background in mind, the court turns to the specific Title XIX provisions and implementing regulations which plaintiff Smith contends create federal rights enforceable under § 1983.

## E. Analysis Of Specific Provisions Of The Medicaid Statute And Regulations

The court will consider separately each provision of the Medicaid statute and its implementing regulations for which plaintiff Smith brings a § 1983 claim.

### 1. 42 U.S.C. § 1396a(a)(17)

■ Plaintiff Smith initially asserts that defendant Palmer has violated § 1396a(a)(17) of the Medicaid statute. Plaintiff Smith contends that the State of Iowa's Medicaid plan is not reasonable because it has failed to provide him with medically necessary care and treatment. Defendant Palmer maintains that a private right of action under § 1983 to enforce this provision of the Medicaid statute is not available because § 1396a(a)(17) does not unambiguously create a federal right.

Section 1396a(a) of the Medicaid statute sets forth the list of requirements a State plan for medical assistance must meet prior to approval of the plan by the Secretary. Section 1396a(a)(17) provides, in pertinent part:

> A State plan for medical assistance must— (17) ... include reasonable standards (which shall be comparable for all groups ...) for determining eligibility for and the extent of medical assistance under the plan which (a) are consistent with the objectives of this subchapter [1396a]. ...

42 U.S.C. § 1396a(a)(17).

Applying the Supreme Court's test for enforceability of a federal statutory right under § 1983, the court finds that plaintiff Smith, a disabled recipient of Medicaid who receives medical assistance under the State of Iowa's plan, is an intended beneficiary of the "reasonable standards" requirement set forth in § 1396a(a)(17). *See West Virginia Univ. Hosp., Inc. v. Casey,* 885 F.2d 11, 20 (3d Cir.1989) ("We recognize, of course, that the primary purpose of [M]edicaid is to achieve the praiseworthy social objective of granting health care coverage to those who cannot afford it.").

The next step in the inquiry as to whether Congress has created in § 1396a(a)(17) a federal right enforceable in a § 1983 action is whether the right plaintiff seeks to enforce is specified with sufficient clarity to allow for judicial enforcement. Section 1396a(a)(17) imposes a requirement that state plans for medical assistance include reasonable standards for determining eligibility for and the extent of medical assistance. Congress has directed that these standards must remain consistent with the Medicaid objective of providing medical services to the needy, the aged, the blind and the disabled. The court concludes that the right created in § 1396a(a)(17) is neither vague nor amorphous and is well within the realm of those rights the judiciary can enforce. *See Loschiavo,* 33 F.3d at 552–53 ("A regulation is not rendered impermissibly vague simply because it calls for a judicial determination of

reasonableness.") (citing *Wilder*, 496 U.S. at 520, 110 S.Ct. 2510 (finding that inquiry into the reasonableness of rates paid to hospitals under Medicaid statute is "well within the competence of the Judiciary")); *Cherry v. Tompkins*, No. C–1–94–460, 1995 WL 502403 at *8–10 (S.D.Ohio Mar.31, 1995).

Under the final step of the test for § 1983 enforceability of a federal statute, the court finds that there is sufficient mandatory language in the statute to create a binding obligation on the state. Section 1396a(a)(17) mandates, it does not merely suggest, that participating States include in their plans for medical assistance "reasonable standards" for determining which individuals qualify for services and the extent of the services the State program will provide. Section 1396a(a)(17)(a) also requires that these standards be consistent with the objectives of the Medicaid Act. *See DeSario v. Thomas*, 139 F.3d 80, 88 (2d Cir.1998), *petition for cert. filed* (July 1, 1998) (No. 98–5070); *Hope Med. Group for Women v. Edwards*, 63 F.3d 418, 425 (5th Cir.1995), *cert. denied sub nom. Foster v. Hope Med. Group for Women*, 517 U.S. 1104, 116 S.Ct. 1319, 134 L.Ed.2d 471 (1996); *Hern v. Beye*, 57 F.3d 906, 910 (10th Cir.), *cert. denied sub nom. Weil v.. Hern*, 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 494 (1995). Congress has clearly expressed the purpose of the Medicaid Act—to enable participating states to "furnish ... medical assistance on behalf ... or aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services...." 42 U.S.C. § 1396. Congress has also conditioned a state's participation in the Medicaid program on the Secretary's approval of a State's plan for medical assistance, which comes only when the state's plan meets the requirements of § 1396a. These requirements include the state's duty to formulate "reasonable standards." The court concludes that § 1396a(a)(17), when taken in this context, imposes a binding obligation on states choosing to participate in the Medicaid program.

The Supreme Court's decision *in Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 512, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), provides support for this conclusion. In *Wilder*, the Supreme Court considered whether the Boren Amendment to the Medicaid statute imposes a binding obligation on States that participate in the Medicaid program. The Boren Amendment provides that a State plan "must ... provide for payment ... of hospital[s] according to rates the State finds are reasonable and adequate." The Court held that this provision creates a binding obligation because it is cast in mandatory, rather than precatory terms and because the "provision of federal funds is expressly conditioned on compliance with the amendment and the Secretary is authorized to withhold funds for noncompliance with this provision." *Id.* The Court found that the Boren Amendment "succinctly sets forth a congressional command which ... is wholly uncharacteristic of a mere suggestion or nudge." *Wilder*, 496 U.S. at 498, 110 S.Ct. 2510 (quoting *Casey*, 885 F.2d at 20).

Thus, the court concludes that Congress intended the "reasonable standards" requirement set forth in § 1396a(a)(17) to benefit plaintiff; that Congress created a right that is sufficiently specific so as to be enforceable by the judiciary; and that Congress imposed a binding obligation on the states participating in the Medicaid program. The court concludes then, that § 1396a(a)(17) provides plaintiff Smith with a federal right enforceable in a § 1983 action, unless Congress intended to foreclose private enforcement of this provision of the Medicaid statute. In *Arkansas Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 528 (8th Cir.1993) the Eighth Circuit Court of Appeals, relying on the Supreme Court's decision in *Wilder*, held that Congress has not foreclosed § 1983 enforcement in the Medicaid statute. Thus, the second step of the test for § 1983 enforceability of a federal right has been satisfied and plaintiff Smith may enforce § 1396a(a)(17) by asserting a claim under § 1983.

### 2. 42 C.F.R. § 440.230

██ Plaintiff Smith also seeks relief on his claim that defendant Palmer's refusal to provide him with a sex reassignment surgery violates the requirement, set forth in 42 C.F.R. § 440.230, that:

(a) The plan must specify the amount, duration, and scope of each service that it provides for—

(1) The categorically needy; and

(2) Each covered group of medically needy.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

42 C.F.R. § 440.230.

■ As discussed above, if a statute creates enforceable rights, then implementing regulations adopted under that statute may further define those enforceable rights. *Harris,* 127 F.3d at 1009. The court has already concluded that § 1396a(a)(17) creates enforceable rights. The court will thus examine § 440.230 under the Supreme Court's test for ascertaining whether this federal implementing regulation creates a right enforceable under § 1983. First, the court finds that this regulation was intended to benefit the plaintiff. The regulation articulates a standard for services rendered under a State's Medicaid program. The plaintiff is entitled to receive these services under the State of Iowa's Medicaid program. It is clear, then, that he is an intended beneficiary of this federal regulation.

The next issue is whether § 440.230 creates a right that is stated with precision and is not so vague as to render it unenforceable by the judiciary. The court in *Sobky v. Smoley,* 855 F.Supp. 1123, 1145 (E.D.Cal. 1994), concluded that it is unclear whether § 440.230(b) is framed with the requisite specificity to create an enforceable right. The court stated:

The regulation provides that each Medicaid service must be "sufficient ... to reasonably achieve its purpose." What is considered reasonable, however, is not defined. The precise definition would seem to "vary with the circumstances of each individual case," a characteristic which, under *Suter,* is not associated with an enforceable right under § 1983.

*Id.* The court agrees that the very nature of a "reasonableness" requirement mandates that the precise definition of what is reasonable will vary with the circumstances of each particular case. However, this does not make the requirement so vague as to be unenforceable.

The other subsections of § 440.230 provide guidance to states seeking to determine whether a given service is sufficient to reasonably achieve its purpose. Section 440.230(c) mandates that a state cannot arbitrarily "deny or reduce the amount, duration, or scope of a required service ... solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c). Section 440 .230(d) provides that a state may place appropriate limits on a service under certain circumstances, including a situation where limits are medically necessary or where the limits are part of utilization control. 42 C.F.R. § 440.230(d); *see DeSario,* 139 F.3d at 93. These subsections inform states that they cannot unreasonably deny or reduce the services they provide based on a Medicaid recipient's condition, but they can limit services based on medical necessity or utilization review. *See DeSario,* 139 F.3d at 93. This instructs states as to when they can limit the amount, duration and scope of services and thus provides some instruction on the reasonableness requirement. Thus, the court concludes that the right further defined in § 440.230(b)—the right to services that are sufficient in amount, duration, and scope to reasonably achieve their purpose—is neither too vague or amorphous to enforce.

The final question, then, is whether the language of the regulation creates a binding obligation on the states choosing to participate in the Medicaid program. That is, whether the terms of the regulation are expressed in mandatory, rather than precatory terms. Section 440.230(b) states that each service a state chooses to provide under its Medicaid program *"must* be sufficient in amount, duration and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b)

(emphasis added). This language makes clear that, in promulgating this regulation, the United States Department of Health and Human Services intended to ensure that states participating in the Medicaid program would provide adequate services to Medicaid recipients. The regulation is written in such a way that it does not give states a choice—states providing services must ensure that the services are sufficient to achieve their purpose. The court concludes that the language of § 440.230(b) imposes a binding obligation on states choosing to participate in the Medicaid program. Thus, this court finds that 42 C.F.R. § 440.230(b) further defines an enforceable federal right and, given the Eighth Circuit's holding that Congress did not intend to foreclose private enforcement in the Medicaid statute, the court finds that the right is enforceable via a § 1983 action.

Thus, because the court concludes that § 1396a(a)(17) creates a federal right, and that right is further defined in 42 C.F.R. 440.230(b), that is sufficiently definite to be enforced under § 1983 and because Congress did not intend to foreclose private enforcement of the Medicaid statute, the court finds that plaintiff Smith states a cause of action under § 1983 for violation of § 1396a(a)(17). Therefore, this segment of defendant Palmer's Motion For Summary Judgment is denied.

### F. Analysis Of The Merits Of Plaintiff Smith's § 1983 Claims

■ Defendant Palmer alternatively argues that even if plaintiff Smith can state a cause of action under § 1983 for violation of a statutory right, plaintiff Smith's claim is without merit on the undisputed facts. The gist of defendant Palmer's argument here is that the State of Iowa is not required under Medicaid to provide plaintiff Smith with all possible medically necessary treatments currently available, but may place appropriate limits on the type of treatments offered Medicaid recipients. Plaintiff Smith asserts that the State of Iowa is obligated to provide Medicaid recipients with "medically necessary" treatments. Plaintiff Smith further contends that sex reassignment surgery is medically necessary and thus is covered by Medicaid.

■ Title XIX "confers broad discretion on the states to adopt standards for determining the extent of medical assistance" that will be provided through their Medicaid programs. Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); see Meusberger v. Palmer, 900 F.2d 1280, 1282 (8th Cir.1990) (noting that "[s]tates have some discretion in determining which medical services to cover under their Medicaid program."). Nonetheless, a state's discretion to limit the scope of the medical services offered through its Medicaid program is subject to important restrictions. As noted above, Title XIX specifically provides that participating states must establish "reasonable standards" that are "consistent with the objectives" of the Medicaid Act. 42 U.S.C. § 1396a(a)(17). The Eighth Circuit Court of Appeals has clearly read and construed this provision as mandating that a state must cover all medical procedures certified as "medically necessary" by a recipient's physician. See Meusberger, 900 F.2d at 1282 (noting that medical services identified in § 1396d(a)(1)–(5) "must be provided whenever they are 'medically necessary.' "); Weaver v. Reagen, 886 F.2d 194, 198 (8th Cir.1989) (same); Ellis v. Patterson, 859 F.2d 52 (8th Cir.1988) (same); Pinneke v. Preisser, 623 F.2d 546, 548 n. 2 (8th Cir.1980) (same); see also Hern v. Beye, 57 F.3d 906, 911 (10th Cir.) ("This circuit, as well as several other courts, has interpreted Title XIX and its accompanying regulations as imposing a general obligation on states to fund those mandatory coverage services that are medically necessary."), cert. denied sub nom. Weil v. Hern, 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 494 (1995); Dexter v. Kirschner, 972 F.2d 1113, 1117 (9th Cir.1992) (holding that participating states "must provide assistance to pay for medically necessary impatient hospital and physician's services for eligible persons"); Hope Med. Group for Women v. Edwards, 860 F.Supp. 1149, 1151 (E.D.La. 1994) (holding that "[e]ach state's Medicaid plan must cover those mandatory covered services which an individual patient's physician certifies are 'medically necessary.' "); Planned Parenthood of Missoula, Inc. v. Blouke, 858 F.Supp. 137, 141 (D.Mont.1994) (holding that participating states must pro-

vide for medically necessary abortions); *Allen v. Mansour*, 681 F.Supp. 1232, 1239 (E.D.Mich.1986) (noting that a state's refusal to provide medically necessary therapy to be arbitrary); *Simpson v. Wilson*, 480 F.Supp. 97, 101 (D.Vt.1979) (holding that the federal Medicaid "regulations do not permit Vermont to decline to provide medically necessary services.").[6] However, under the Medicaid Act, the Eighth Circuit Court of Appeals has held that a state may "reasonably exclude some procedures on the basis that they are never, or generally never, of sufficient medical necessity." *Hodgson*, 614 F.2d at 607. The Eight Circuit Court of Appeals has further recognized that "the decision of whether or not certain treatment or a particular type of treatment is 'medically necessary' rests with the individual recipient's physician and not with clerical personnel or government officials." *Pinneke*, 623 F.2d at 550.

Here, plaintiff Smith has come forward with evidence that sex reassignment surgery is a non-experimental procedure that is "practiced throughout the world." Satterfield Aff. at p. 1. Dr. Satterfield indicates in her affidavit that studies have found that individuals suffering from gender dysphoria, such as plaintiff Smith, improve with sex reassignment surgery and not psychotherapy. *Id.* Dr. Satterfield also indicates that based upon her examination of plaintiff Smith that "[he] exhibits the degree of gender dysphoria which requires surgical sex reassignment as the medically necessary treatment." Satterfield letter at p. 1. The court concludes that plaintiff Smith has generated a material question of fact as to whether sex reassignment surgery is a medically necessary treatment for plaintiff

Smith's gender dysphoria. Therefore, this segment of defendant Palmer's Motion For Summary Judgment is denied.

### G. Analysis Of The Merits Of Plaintiff Smith's Due Process Claim

Plaintiff Smith's second claim is that the Iowa Department of Human Services' denial of sex reassignment surgery is arbitrary and, therefore, violates the due process clause of the Fourteenth Amendment. While defendant Palmer concedes that plaintiff Smith's complaint states a viable due process cause of action under § 1983, he asserts that plaintiff Smith's due process claim is without merit on the undisputed facts.

In *Pinneke v. Preisser*, 623 F.2d 546 (8th Cir.1980), a suit was brought by a Medicaid claimant who had undergone sex reassignment surgery. In that lawsuit, plaintiff sought injunctive and declaratory relief, alleging a denial of due process and equal protection, in addition to her statutory right to Medicaid benefits, based on the Iowa Medicaid program's failure to provide coverage for the surgery. *Id.* at 547. The Eighth Circuit Court of Appeals reviewed the State of Iowa's denial of funding for a sex reassignment operation and after finding that "radical sex conversion surgery is the only medical treatment available to relieve or solve the problems of a true transsexual," *id.* at 548, the court found the state's refusal to fund violative of Medicaid:

[A] state plan absolutely excluding the only available treatment known at this stage of the art for a particular condition must be considered an arbitrary denial of

---

**6.** Defendant Palmer's reliance on decisions from other circuit courts of appeal, *see Preterm, Inc. v. Dukakis*, 591 F.2d 121, 125 (1st Cir.1979), is misplaced. In *Preterm*, the court rejected the argument that a state Medicaid program must cover any medical procedure certified by a doctor as medically necessary. Instead, the First Circuit Court of Appeals held that a state may make "the macro-decision ... that only certain kinds of medical assistance are deemed sufficiently necessary to come under the coverage of its plan." *Id.* at 125. Although the court recognizes that other courts have declined to impose a "medical necessity" restriction on a state's discretion in determining what Medicaid services a state is required to provide, the court is bound to

apply controlling Eighth Circuit precedent here when applicable. It is thus clear that until and unless *Weaver* is expressly overruled by the Eighth Circuit *sitting en banc*, all panels of the Court of Appeals and all district courts in this circuit are under duty to follow *Weaver*. See *Drake v. Scott*, 812 F.2d 395 (8th Cir.1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel. Only the Court *en banc* can take such action."); *United States v. Lewellyn*, 723 F.2d 615, 616 (8th Cir.1983) ("As a panel we are without authority to modify the ... standard established in this circuit. Only the court en banc is empowered to change an existing rule of law.").

benefits based solely on the "diagnosis, type of illness or condition."

*Id.* at 549.

It is uncontested that following the Eighth Circuit Court of Appeals decision in *Pinneke*, the Iowa Department of Human Services added a specific exclusion of sex reassignment surgery to the Iowa Administrative Rules by an amendment in 1994. On November 9, 1994, the Iowa Department of Human Services published a notice of intended action regarding the proposed amendment and solicited public comment on it. This notice contained the Iowa Department of Human Services' reasons for proposing to exclude sex reassignment surgery from the coverage under the Iowa Medicaid program. The notice indicated that the Iowa Department of Human Services had a literature review conducted for it by the Iowa Foundation for Medical Care. XVII Iowa Admin. Bull. 730 (Nov. 9, 1994). The notice indicates that the review found that:

> *Continuing controversy regarding the definition, diagnosis, cause, and treatment of gender dysphoria, particularly regarding sex reassignment surgery.
> *Various treatment options, including psychotropic medication and psychotherapy.
> *Lack of a consensus opinion that sex reassignment surgery is an appropriate treatment.
> *A need for further study.

*Id.* at 734. On December 14, 1994, the policy making body of the Iowa Department of Human Resources, the Council on Human Services, adopted the proposed amendment to the Iowa Administrative Rules which excluded sex reassignment surgery.

■ The Due Process Clause prohibits only those classifications within a Federal social welfare program that are patently arbitrary and totally lacking in rational justification. *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Williams v. Chater,* 98 F.3d 490, 491 (9th Cir.1996); *Dotson v. Shalala,* 1 F.3d 571, 580 (7th Cir.1993); *Baker v. City of Concord,* 916 F.2d 744, 755 (1st Cir.1990); *Schanuel v. Anderson,* 708 F.2d 316, 319 (7th Cir.1983); *Rasulis v. Weinberger,* 502 F.2d 1006, 1010 (7th Cir.1974). Here, plaintiff Smith asserts that the provision excluding sex reassign-

ment surgery was adopted without properly considering the opinions of those experts within the medical community, such as plaintiff Smith's treating physician, who treat gender dysphoria with sex reassignment surgery. To support this proposition, plaintiff Smith has offered the affidavit of his treating physician, Dr. Satterfield, who states in her affidavit that: "The Iowa Foundation for Medical [C]are report is poorly researched and certainly does not rely on opinions of leaders in the field, those who actually work with these patients." Satterfield Aff. at p. 2. While a copy of the Iowa Foundation For Medical Care's report for the Iowa Department of Human Services is contained in the record, it has not been offered to prove the truth of the matters asserted in it. Instead, defendant Palmer has offered the literature review as a portion of the historical review conducted by the Iowa Department of Human Services regarding sex reassignment surgery and as a facet of the Iowa Department of Human Services' rationale for excluding sex reassignment surgery from the Iowa Medicaid program. The court concludes that plaintiff Smith has generated a genuine issue of material fact as to whether the Iowa Department of Human Services' reliance on the Iowa Foundation For Medical Care's report was a reasonable exercise of discretion. Therefore, this segment of defendant Palmer's Motion For Summary Judgment is also denied.

## IV. CONCLUSION

Initially, because the court concludes that 42 U.S.C. § 1396a(a)(17) creates a federal right, which is further defined in 42 C.F.R. 440.230(b), that is sufficiently definite to be enforced under § 1983 and because Congress did not intend to foreclose private enforcement of the Medicaid statute, plaintiff Smith states a cause of action under § 1983 for violation of § 1396a(a)(17). The court also concludes that plaintiff Smith has generated a material question of fact as to whether sex reassignment surgery is a medically necessary treatment for plaintiff Smith's gender dysphoria. Finally, the court concludes that plaintiff Smith has generated a genuine issue of material fact as to whether the Iowa Department of Human Services' reliance on the

Iowa Foundation For Medical Care's report was a reasonable exercise of discretion. Therefore, defendant Palmer's Motion For Summary Judgment is **denied.**

**IT IS SO ORDERED.**