# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2007

Charles R. Fulbruge III
Clerk

No. 06-50599

EQUAL ACCESS FOR EL PASO, Inc.; MONICA RIVERO, as next friend of
Kevin Rivero; PATRICIA DUARTE MELENDEZ, in her individual capacity
and as next friend of Orandie Jahssar Melendez-Duarte; JESSILYN NAGEL,
as next friend of Heidi Armstrong and McKenna Armstrong; RUTH
GALLEGOS, in her individual capacity and as next friend of Amber Villegas

Plaintiffs-Appellees

v.

ALBERT HAWKINS, Commissioner of the Texas Health and Human Services
Commission, individually and in his official capacity

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before DENNIS, CLEMENT, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

This case requires us to determine whether, in light of the Supreme
Court's decision in Gonzaga University v. Doe, 536 U.S. 273 (2002), Medicaid
recipients in El Paso County, Texas, may bring an action under 42 U.S.C. §
1983[1] to challenge whether the methods and procedures of the Texas State

---

[1] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or

Medicaid Plan ("Plan") assure that the payments for care and services available under the Plan are sufficient to provide them with access to medical assistance "at least to the extent that such care and services are available to the general population in the geographic area" as required by 42 U.S.C. § 1396a(a)(30)(A). More specifically, the question presented is whether the so-called "Equal Access" requirement of § 1396a(a)(30)(A) is enforceable in an action pursuant to § 1983 so as to afford declaratory and injunctive relief because the Medicaid payment rates for the El Paso area are deficiently priced to enlist enough providers to make medical assistance under the Plan available to the Medicaid recipients in the El Paso area at least to the extent that such care and services are available to the general (non-Medicaid) population in that area.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.

Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals.  See 42 U.S.C. § 1396 et seq.  Although participation in the program is voluntary, participating states must comply with certain requirements imposed by the Medicaid Act, id., and regulations promulgated by the Secretary of Health and Human Services ("Secretary").  To qualify for federal assistance, a state must submit to the Secretary and have approved a "plan for medical assistance," § 1396a(a), that contains a comprehensive statement describing the nature and scope of the state's Medicaid

---

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

program.  42 C.F.R. § 430.10 (2007).  The state plan is required to provide, among other things, methods and procedures for the payment of care and services under the plan necessary to assure their availability to the Medicaid population to the same extent as they are available to the general population in that geographic area.  42 U.S.C. § 1396a(a)(30)(A).

Section 1396a(a)(30)(A) of the Medicaid Act sets out the requirement that Medicaid recipients must be assured of "equal access" to medical assistance with the general populace in respect to plan-specified care and services, in pertinent part, as follows:

> A State plan for medical assistance must . . . provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments . . . are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

42 U.S.C. § 1396a(a)(30)(A).

The state of Texas has elected to participate in the Medicaid program and has designated the Health and Human Services Commission ("HHSC"), of which defendant Hawkins is the commissioner, to administer its Plan.  The Texas Medicaid program is financed through a joint federal-state arrangement, in which every $1 of state funds disbursed for Medicaid is matched by approximately $2 of federal funds.  The HHSC compensates Medicaid providers through two programs: (1) the traditional fee-for-service program; and (2) the managed care program.  Under the fee-for-service program, health care professionals are reimbursed based on fee schedules established by HHSC. These fee schedules, which assign discrete codes, and in turn monetary values, to hundreds of different medical procedures, are in effect and consistent

statewide. Under the managed care program, HHSC administers payments to participating managed care providers, such as health maintenance organizations, using capitation or per-head rates, which are fixed amounts paid to the participating providers on a per-member, per-month basis. The capitation rates vary according to market medical service prices in each geographic area.

B.

Plaintiff Equal Access for El Paso is a nonprofit corporation located in El Paso County, Texas, composed of individuals interested in the provision of health care in the El Paso geographic area. Its purpose is to develop health care resources and access to health care in that area. On October 24, 2003, Equal Access for El Paso, on behalf of its members, many of whom it alleges are Medicaid recipients and health care professionals and other providers directly and adversely impacted by HHSC's actions, and on behalf of the patients of its member health care professionals and providers, brought suit in the United States District Court for the Western District of Texas against HHSC.[2] Also joining in this suit were several individual Medicaid recipients residing in El Paso, who sued as individuals on their own behalf and on behalf of their respective children, as well as three health care providers (a doctor, a hospital, and a health maintenance organization) suing on their own behalf and on behalf of their Medicaid recipient patients/enrollees.[3] Together, these plaintiffs allege that HHSC set deficient Medicaid reimbursement and capitation rates, resulting in inadequate access to medical services for Medicaid recipients who live in the

---

[2] Plaintiffs amended their complaint on June 24, 2004, but the named parties remain the same.

[3] The district court dismissed the claims of both the individual providers and the provider members of Equal Access for El Paso, finding that the providers did not have a private right of action under 42 U.S.C. § 1396a(a)(30)(A). The dismissal of those claims is not before this court on interlocutory appeal.

El Paso area as compared to the rest of the State and as compared to individuals covered by private insurance in the El Paso area. This follows, plaintiffs contend, because the inadequate reimbursement and capitation rates, when combined with the relatively high percentage of Medicaid recipients in the El Paso area, has created a financial incentive for physicians to relocate and practice in other communities in the State and for physicians practicing in the El Paso area to seek out patients covered by employer-sponsored insurance.

In the district court, plaintiffs originally brought suit under § 1983, alleging violations of six provisions of the Medicaid Act, the Supremacy Clause, and the Equal Protection Clause of the Fourteenth Amendment. HHSC then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court denied HHSC's 12(b)(1) motion, finding that the plaintiffs had standing, but granted its 12(b)(6) motion, dismissing all of the plaintiffs' claims with the exception of the recipients' claim under § 1396a(a)(30)(A)'s "Equal Access" provision. The district court denied the defendant's motion with respect to the Equal Access claim because the court determined that this particular statutory provision confers on Medicaid recipients an individual federal right enforceable through § 1983.[4] On interlocutory appeal, HHSC contends that, in light of the Supreme Court's

---

[4] The district court was obliged to so decide by our prior decision in Evergreen Presbyterian Ministries Inc. v. Hood, 235 F.3d 908 (5th Cir. 2000), in which we held that the Equal Access provision of § 1396a(30)(A) gave Medicaid recipients, but not providers, a federal statutory right enforceable under § 1983. In view of the fact that the Supreme Court's intervening decision in Gonzaga, 536 U.S. at 273, may have partially overruled Evergreen, however, the district court elected to certify that question to us rather than to proceed immediately to determine whether declaratory and injunctive relief was appropriate.

decision in Gonzaga, the Equal Access provision does not create a federal right of action enforceable through § 1983.[5]

## II. STANDARD OF REVIEW

This court reviews de novo the district court's disposition of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6). See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003).

## III. DISCUSSION

"'Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws.'" Blessing v. Freestone, 520 U.S. 329, 340 (1997) (internal quotations omitted). The § 1983 remedy encompasses violations of rights secured by federal statutory as well as constitutional law. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). In order to seek redress through § 1983, therefore, "a plaintiff must assert the violation of a federal right, not merely a violation of

---

[5] HHSC also challenges on appeal the district court's determination that the Medicaid-recipient plaintiffs in this action have standing to assert a claim under the Equal Access provision. We agree with the district court's extensive analysis that plaintiffs' asserted injury – insufficient access to medical care and services – is fairly traceable to HHSC's conduct and will likely be redressed if they are granted the declaratory and injunctive relief that they have requested. Several courts have recognized the direct connection between Medicaid recipients' access to medical care and services and low reimbursement rates. See, e.g., Okla. Chapter of the Am. Acad. of Pediatrics v. Fogarty, 366 F. Supp. 2d 1050, 1106-07 (N.D. Okla. 2005); Memisovski ex rel Memisovski v. Maram, No. 92-C-1982, 2004 WL 1878332, at *42 (N.D. Ill. Aug. 23, 2004) (unreported); Clayworth v. Bonta, 295 F. Supp. 2d 1110, 1116 (E.D. Cal. 2003), rev'd on other grounds, 140 F. App'x 677 (9th Cir. 2005); Clark v. Kizer, 758 F. Supp. 572, 577 (E.D. Cal. 1990), aff'd in relevant part, Clark v. Coye, 967 F.2d 585 (9th Cir. 1992); Thomas v. Johnston, 557 F. Supp. 879, 903-04 (W.D. Tex. 1983). Moreover, we take judicial notice of the fact that HHSC has itself expressly recognized this connection in its bi-annual Consolidated Budget that it submitted to the Texas Legislature in October 2006, wherein it argued that "[r]ate increases for physicians would promote access to care for Medicaid clients that would likely erode without the increase." Tex. Health & Human Servs. Comm'n, Consol. Budget Financial Year 2008-2009, at 54 (2006). We therefore have no difficulty concluding that the recipient plaintiffs have standing to assert their Equal Access provision claim.

federal law." Blessing, 520 U.S. at 340 (emphasis in original) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989)).

In Gonzaga, the Supreme Court noted that some language in its prior opinions had suggested that something less than an unambiguously conferred right is enforceable by § 1983. 536 U.S. at 282. As an example, the Court quoted from Blessing: "'Congress must have intended that the provision in question benefit the plaintiff,' 'the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence,' and 'the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.'" Id. (quoting Blessing, 520 U.S. at 340-341). On the other hand, the Court pointed out that Blessing, in the same paragraph, emphasized that "it is only violations of rights, not laws, which give rise to § 1983 actions." Id. at 283 (citing Blessing, 520 U.S. at 340). Consequently, the Court in Gonzaga concluded that "[t]his confusion has led some courts to interpret Blessing as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect . . . ." Id.

After reviewing its previous decisions in some detail, the Supreme Court in Gonzaga expressly rejected "the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." Id. The Court then declared:

> Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is rights, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

Id. (emphasis in original).

Further, the Court in Gonzaga set forth some of the factors from its prior cases that are indications of Congressional intent to make statutory provisions enforceable under § 1983. "[A] claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff." Id. at 285 (quoting Golden State Transit Corp., 493 U.S. at 108 n.4). Such inquiries simply require a determination as to whether Congress intended to confer individual rights upon a class of beneficiaries. Id. (citing Alexander v. Sandoval, 532 U.S. 275, 289 (2001); Wright v. Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 423 (1987); California v. Sierra Club, 451 U.S. 287, 294 (1981)).

On the contrary, the Gonzaga Court observed, a statutory provision fails to confer enforceable rights when it "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite Congressional intent to create new rights," id. at 287 (citing Alexander, 532 U.S. at 288-289; Cannon v. Univ. of Chi., 441 U.S. 677, 690 n. 13 (1979)); when it "speak[s] only in terms of institutional policy and practice, not individual" concerns, id. at 288; and when it has "an 'aggregate' focus [and is] not concerned with 'whether the needs of any particular person have been satisfied,'" id. (citing Blessing, 520 U.S. at 343-44).

In Gonzaga, the Court explained that plaintiffs under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Thus, once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.[6] Id. at 284.

---

[6] The Court in Gonzaga further explained that "[t]he State may rebut this presumption by showing that Congress 'specifically foreclosed a remedy under § 1983.'" Gonzaga Univ. v. Doe, 536 U.S. 273, 285 n.4 (2002) (quoting Smith v. Robinson, 468 U.S. 992, 1004-05, n. 9 (1984)). "The State's burden is to demonstrate that Congress shut the door to private

8

Applying the foregoing principles, we conclude that the Medicaid Act's Equal Access provision, 42 U.S.C. § 1396a(a)(30)(A), does not confer individual private rights that are enforceable under § 1983. The provision does not contain sufficient "rights-creating" language critical to showing unambiguously the requisite Congressional intent to create individualized rights for Medicaid recipients and health care providers. Even when read in the context of the entire statute, the Equal Access provision does not create rights for individuals or an identifiable class. It speaks only to the state and the Secretary in their functions of proposing and approving a state plan calculated to "enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." § 1396a(a)(30)(A). Thus, like the provisions at issue in Gonzaga and Blessing, the Equal Access provision speaks only in terms of institutional policy and practice, has an "aggregate" rather than an individualized focus, and is not concerned with whether the needs of any particular person or class of individuals have been satisfied. It therefore does not create a private individual right enforceable under § 1983.

Before Gonzaga, we held in Evergreen, 235 F.3d 908, 927-29 (5th Cir. 2000), that Medicaid recipients, but not providers, may bring actions under §

---

enforcement either expressly, through "specific evidence from the statute itself," [Wright, 479 U.S. at 423], or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983," [Blessing, 520 U.S. at 341]. See also Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 20 (1981)." Id. But the Court added that these questions did not arise in Gonzaga due to its conclusion that the Family Educational Rights and Privacy Act "confers no individual rights and thus cannot give rise to a presumption of enforceability under § 1983." Id.

Similarly, in the present case, the question of whether the State of Texas may rebut such a presumption does not arise due to our conclusion that the Equal Access provision confers no individual right within the context of this case enforceable under § 1983.

1983 to enforce the Equal Access provision against a state administrator of a Medicaid state plan. It is evident, however, that the Supreme Court in Gonzaga abrogated Evergreen in respect to such suits by recipients while confirming it insofar as it disallows § 1983 actions by providers under the Equal Access provision.

We may no longer, as we did in Evergreen, resolve the ambiguities in Blessing, Wilder, and the Equal Access provision in favor of finding a Congressional intent to authorize Medicaid recipients to bring Equal Access provision suits under § 1983. We are forced by Gonzaga to abjure the notion that anything short of an unambiguously conferred private individual "right," rather than the broader or vaguer "benefits" or "interests," may be enforced under § 1983. Accordingly, we may not follow Evergreen's essential inference that, because Congress's aim in the Medicaid Act was to protect the interests of health care recipients as its primary, ultimate beneficiaries, Congress necessarily meant for recipients to enforce the Equal Access provision in private suits under § 1983. The Equal Access provision has a clearly aggregate and systemic focus that deals with institutional policy and procedures, rather than an individualized focus concerned with whether the needs of any particular person or class of recipients have been satisfied. Consequently, we conclude that the Equal Access provision, which plausibly invests the Secretary with the exclusive power and duty of carrying it into effect, does not necessarily or unambiguously create, in addition, private rights in recipients to enforce Equal Access by individual or class suits under § 1983. Accord Mandy R. v. Owens, 464 F.3d 1139, 1148 (10th Cir. 2006); Westside Mothers v. Olszewski, 454 F.3d 532, 542-43 (6th Cir. 2006); Sanchez v. Johnson, 416 F.3d 1051, 1059-61 (9th Cir. 2005); Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 57 (1st Cir.

2004).  Contra Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 443 F.3d 1005, 1014-16 (8th Cir. 2006), vacated on other grounds, Selig v. Pediatric Specialty Care, Inc., 127 S. Ct. 3000 (2007).

## IV.  CONCLUSION

For these reasons, the district court's judgment partially denying the defendant's motion to dismiss the plaintiffs' Equal Access provision claim under § 1983 is REVERSED and the case is REMANDED to the district court with directions to enter a judgment dismissing all claims with prejudice.