**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2009

Charles R. Fulbruge III
Clerk

No. 08-50934

CURTIS L. DELANCEY; MARIAN D. DELANCEY

Plaintiffs-Appellants

v.

CITY OF AUSTIN

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-813

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Plaintiffs-Appellants Curtis L. Delancey and Marian D. Delancey ("Plaintiffs") sued Defendant-Appellee the City of Austin ("the City") seeking monetary damages under the Uniform Relocation Assistance and Real Property Acquisition Policy Act ("URA"), 42 U.S.C. § 4601 *et seq.* The district court granted summary judgment in favor of the City, holding that the URA does not provide a private right of action for monetary damages. We AFFIRM for essentially the reasons stated by the district court.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs owned a parcel of land located at 5106 General Aviation Avenue in Austin, Texas ("the Property"); the Property is adjacent to the Austin Bergstrom International Airport. Plaintiffs operated an automobile salvage yard business and a wrecker service business on the Property.

On January 14, 2007, Plaintiffs executed a warranty deed transferring the Property to the City in exchange for $600,000 plus relocation benefits. At the January 14 closing, Plaintiffs and the City also executed a non-resident rental agreement for the Plaintiffs' continued short-term occupancy of the Property. On the same day, the City provided Plaintiffs written notice to vacate the Property within 90 days.[1]

Plaintiffs purchased another parcel of land from which they could operate their wrecker business but which, due to a lack of space, was unsuitable for operating their automobile salvage business. Thus, Plaintiffs continued to store 250 non-operable vehicles on the Property.

In a letter dated August 29, 2007, the City gave Plaintiffs notice to vacate the Property by September 28, 2007. Plaintiffs then initiated the instant suit, seeking monetary damages under the URA, 42 U.S.C. § 4601 *et seq.*, on the grounds that the City had not fulfilled its obligation to provide relocation assistance under the URA; Plaintiffs also asserted a claim under 42 U.S.C. § 1983, arguing that the City, through the actions of its employee Melinda Ruby, had deprived Plaintiffs of their URA rights. Additionally, Plaintiffs sought a preliminary injunction to prevent the City from requiring Plaintiffs to vacate the Property.

---

[1] The City subsequently extended this 90 day period.

After conducting an evidentiary hearing, the district court denied Plaintiffs' motion for a preliminary injunction.[2] The City then filed a motion for summary judgment, which the district court granted on the grounds that (1) the URA does not provide a private right of action for monetary damages, and (2) Ms. Ruby, whose actions form the apparent basis of Plaintiffs' § 1983 claim, does not qualify as a policymaker for the City. Based on this grant of summary judgment, the district court entered final judgment dismissing Plaintiffs' claims with prejudice, and Plaintiffs timely appealed.

## DISCUSSION

Applying the analysis announced by the Supreme Court in *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002), we hold that the URA does not provide a private right of action for monetary damages, and accordingly we affirm the district court's grant of summary judgment in favor of the City.[3]

---

[2] Plaintiffs do not appeal the denial of injunctive relief.

[3] We also affirm the grant of summary judgment on Plaintiffs' § 1983 claim. The district court correctly concluded that Plaintiffs' § 1983 claim against the City must fail as a matter of law because Plaintiffs cannot establish that Ms. Ruby is a policymaker for the City. It has been long established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The district court concluded that Ms. Ruby's actions could not represent the official policy of the City because the City of Austin Charter vests all policymaking authority with the City Council, *see* City of Austin Charter Art. 1 § 2 ("all powers of the city shall be vested in and exercised by an elective council, hereinafter referred to as 'the council,' which shall enact legislation, adopt budgets, determine policies, and appoint the city manager who shall execute the laws and administer the government of the city"), and because Plaintiffs produced no evidence that the City of Austin expressly or impliedly acknowledged that Ms. Ruby acted as a policymaker, *see Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *cf. Flores v. Cameron County*, 92 F.3d 258, 269 (5th Cir. 1996) ("[t]he Supreme Court has precluded the possibility of finding a county employee to possess 'de facto policymaking authority'") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)). For these same reasons, we affirm the district court's grant of summary judgment.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). Rather, "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Gonzaga*, 536 U.S. at 280 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)). In enacting a federal statute, Congress may choose to confer individual rights subject to private enforcement, but to do so the statute must "speak with a clear voice" and "unambiguous[ly]" confer those rights. *Gonzaga*, 536 U.S. at 280. Thus, "the question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction," *Transamerica Mortgage Advisors Inc. v. Lewis*, 444 U.S 11, 15 (1979), and "the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Here, Plaintiffs contend that the URA creates an implied private right of action.[4] In *Gonzaga*, the Supreme Court discussed the test for determining whether a statute implies a private right of action, stating that "for Congress to create new rights enforceable under an implied private right of action" it must do so in "clear and unambiguous terms." 536 U.S. at 290;[5] *see also Equal Access*

---

[4] Plaintiffs do not dispute that the text of the URA conveys no express private right of action.

[5] Though the precise issue in *Gonzaga* was whether a statute created rights enforceable via a § 1983 action, the Court noted that "[a] court's role in discerning whether personal rights exist in the § 1983 context should [] not differ from its role in discerning whether personal rights exist in the implied right of action context. Both inquiries simply require a

*for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 702-03 (5th Cir. 2007) ("[T]he Supreme Court in *Gonzaga* expressly rejected 'the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.'" (quoting *Gonzaga*, 536 U.S. at 283)). Further, in *Gonzaga* the Court set forth factors that indicate Congressional intent to create individual rights enforceable through private rights of action, explaining that "for a statute to create such private rights, its text must be phrased in terms of the persons benefitted." *Gonzaga*, 536 U.S. at 284 (internal quotations omitted); *see also Equal Access for El Paso*, 509 F.3d at 702 ("[A] claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff." (quoting *Gonzaga*, 536 U.S. at 285)). As examples of statutes phrased to create enforceable individual rights, the Court cited Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972,[6] which contain "an unmistakable focus on the benefitted class." *Gonzaga*, 536 U.S. at 284 (internal quotations omitted). Conversely, the Court has also noted that "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

___

determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Gonzaga*, 536 U.S. at 285 (internal citations omitted).

[6] Title VI provides: "*No person* in the United States *shall . . .* be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. Title IX provides: "*No person* in the United States *shall*, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance." Where a statute does not include this sort of explicit "right- or duty-creating language," we rarely impute to Congress an intent to create a private right of action.

*Gonzaga*, 536 U.S. at 284 n.3 (internal citations omitted).

Applying these factors in *Gonzaga*, the Court held that the statute under consideration, a provision of the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g ("FERPA"), failed to confer enforceable rights because it lacked critical rights-creating language and instead merely directed the Secretary of Education in institutional policy and practice. *See Gonzaga*, 536 U.S. at 287-88; *see also Equal Access for El Paso*, 509 F.3d at 702-03.

The URA provision at issue in the instant case is similar, in respect to lack of rights-creating indicia, to the FERPA provision in *Gonzaga*, and for many of the same reasons discussed in *Gonzaga*, we hold that the URA does not create a private right of action for money damages. The relevant URA provisions, which Plaintiffs contend create a private right of action in this case, read as follows:

> (b) Availability of advisory services
> The head of any displacing agency shall ensure that the relocation assistance advisory services described in subsection (c) of this section are made available to all persons displaced by such agency. If such agency head determines that any person occupying property immediately adjacent to the property where the displacing activity occurs is caused substantial economic injury as a result thereof, the agency head may make available to such person such advisory services.
>
> (c) Measures, facilities, or services; description
> Each relocation assistance advisory program required by subsection (b) of this section shall include such measures, facilities, or services as may be necessary or appropriate in order to–
>     (1) determine, and make timely recommendations on, the needs and preferences, if any, of displaced persons for relocation assistance;
>     (2) provide current and continuing information on the availability, sales prices, and rental charges of comparable replacement dwellings for displaced homeowners and tenants and suitable locations for businesses and farm operations;
>     . . . .

6

> (4) assist a person displaced from a business or farm operation in obtaining and becoming established in a suitable replacement location;
>
> (5) supply (A) information concerning other Federal and State programs which may be of assistance to displaced persons, and (B) technical assistance to such persons in applying for assistance under such programs; and
>
> (6) provide other advisory services to displaced persons in order to minimize hardships to such persons in adjusting to relocation.

42 U.S.C. § 4625(b)-(c). Like the FERPA provision addressed in *Gonzaga*, the statutory provisions above are directed at the "head of any displacing agency" rather than at the individuals benefitted by the statute. *See Gonzaga*, 536 U.S. at 287; *Alexander*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"). Further, the URA does not contain rights-creating language like that in Titles VI and IX. Instead it prescribes a policy and practice for administering relocation assistance. *See* 42 U.S.C. § 4625(b) ("The head of any displacing agency shall ensure that the relocation assistance advisory services described in subsection (c) of this section are made available to all persons displaced by such agency"); 42 U.S.C. § 4625(c) ("Each relocation assistance advisory program required by subsection (b) of this section shall include such measures, facilities, or services as may be necessary or appropriate . . . ."); *see also* 42 U.S.C. § 4621(b) ("This subchapter [of the URA] *establishes a uniform policy* for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance.") (emphasis added). The Supreme Court found similar "policy or practice" language insufficient to create an individual right of action in *Gonzaga*, 536 U.S. at 287-88. *See also Equal Access for El Paso*, 509 F.3d at 703 ("[A] statutory provision fails to confer enforceable

rights when it entirely lack[s] the sort of rights-creating language critical to showing the requisite Congressional intent to create new rights; when it speak[s] only in terms of institutional policy and practice, not individual concerns; and when it has an aggregate focus [and is] not concerned with whether the needs of any particular person have been satisfied." (internal quotations and citations omitted)). Thus, the URA provision here does not evidence Congressional intent to create a private right of action for money damages.[7] Accordingly, we AFFIRM the district court's grant of summary judgment in favor of the City.

---

[7] Plaintiffs argue that other circuits have recognized private rights of action under the URA in *Pou Pacheco v. Aquino*, 833 F.2d 392, 398–400 (1st Cir. 1987) and *Tullock v. State Highway Commission*, 507 F.2d 712, 715–17 (8th Cir. 1974). However, this argument, premised on cases that predate and conflict with *Gonzaga*, is unpersuasive. *Cf. Equal Access for El Paso*, 509 F.3d at 704 (rejecting, as inconsistent with *Gonzaga*, a prior circuit precedent permitting § 1983 suits to enforce the Equal Access provision of the Medicaid Act, 42 U.S.C. § 1396a). Moreover, neither *Pou Pacheco*, 833 F.2d at 396-400, which affirmed the reimbursement of certain expenses under the URA, nor *Tullock*, 507 F.2d at 716-17, which held that a regulation limiting reimbursements was inconsistent with the URA, are analogous to the instant suit in which Plaintiffs seek monetary damages for alleged URA violations. Plaintiffs have presented no post-*Gonzaga* authority, either from this circuit or elsewhere, to support a private right of action for such damages under the URA. *See Alexander*, 532 U.S. at 286 (noting that there must be "an intent to create not just a private right but also a private remedy").