# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2013

No. 12-30565

Lyle W. Cayce
Clerk

TIFFANY L. ROMANO,

Plaintiff - Appellee

v.

BRUCE D. GREENSTEIN, in his official capacity as Secretary of the Louisiana
Department of Health and Hospitals,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This appeal turns on whether 42 U.S.C. § 1396a(a)(8)—a provision of the
Medicaid Act—creates a right that is enforceable under 42 U.S.C. § 1983, and,
if so, whether a Medicaid claimant must exhaust Louisiana's procedure for
judicial review before filing suit in federal court. We conclude that § 1396a(a)(8)
creates a right enforceable under § 1983, and that exhaustion of Louisiana's
procedure for judicial review is not required before a Medicaid claimant files suit
in federal court.

## I.

"Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals."[1]  A state's participation in the Medicaid program is voluntary, but "participating states must comply with certain requirements imposed by the Medicaid Act and regulations promulgated by the Secretary of Health and Human Services."[2]

Plaintiff Tiffany Romano received Medicaid benefits in Louisiana.  In August 2011, the Louisiana Department of Health and Hospitals ("DHH") decided that Romano was no longer eligible for Medicaid benefits.  Romano appealed to a state administrative law judge ("ALJ"), who reversed DHH's termination of her Medicaid benefits.  In November 2011, DHH again proposed termination of Romano's Medicaid benefits.  Romano again appealed to an ALJ, who affirmed DHH's termination of her Medicaid benefits.  Romano then sued the Secretary of DHH in federal court under 42 U.S.C. § 1983, the federal Medicaid Act, and the U.S. Constitution, alleging that DHH's decisions, policies, and procedures resulted in an illegal termination of her Medicaid benefits. DHH moved to dismiss Romano's suit, arguing that the availability of a state judicial review process divested the district court of subject matter jurisdiction and that Romano did not have a private cause of action under § 1983.  Alternatively, DHH requested that the district court exercise *Burford* abstention.  Romano moved for summary judgment, contending that Louisiana violated federal standards in discontinuing her Medicaid benefits.  The district court denied DHH's motion to dismiss and granted summary judgment in favor of Romano.  DHH timely appealed.

---

[1] *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 699 (5th Cir. 2007).

[2] *Id.* (internal citation omitted).

## II.

On appeal, DHH does not challenge the merits of the district court's decision to grant summary judgment in favor of Romano. Instead, it challenges only the district court's denial of its motion to dismiss. Specifically, DHH argues that (1) the district court lacked subject matter jurisdiction over Romano's claims; (2) Romano did not have a private cause of action under § 1983; and (3) the district court should have exercised *Burford* abstention.

## A.

We turn first to DHH's argument that the district court lacked subject matter jurisdiction over Romano's claims. We review *de novo* a district court's decision to deny a motion to dismiss for lack of subject matter jurisdiction.[3] Each of DHH's arguments turns on the procedures for administrative and judicial review that Louisiana makes available to Medicaid claimants. Under the Medicaid Act, "[t]o qualify for federal assistance, a state must submit to the Secretary and have approved a 'plan for medical assistance.'"[4] The state plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."[5] Louisiana complies with that requirement by granting Medicaid claimants a fair hearing before a state ALJ. Under Louisiana's Administrative Procedure Act, claimants may also appeal an ALJ's adverse decision regarding their Medicaid benefits in a state district court.[6]

---

[3] *Id.* at 701–02.

[4] *Id.* at 699 (quoting 42 U.S.C. § 1396a(a)).

[5] 42 U.S.C. § 1396a(a)(3).

[6] LA. REV. STAT. ANN. § 49:964(A)(1), (B).

DHH first contends that the district court lacked subject matter jurisdiction because Romano failed to exhaust Louisiana's procedure for judicial review.[7]  To be clear, Louisiana provides Medicaid claimants with both an opportunity for administrative review (a fair hearing before an ALJ) and an opportunity for judicial review (an appeal in state district court from an ALJ's adverse decision).  This case does not require us to determine whether Romano was required to exhaust her administrative remedy, because she appealed to an ALJ and received an adverse decision before filing suit in federal court.[8]  This case only presents the question of whether Romano was required to exhaust her state judicial remedy before filing suit in federal court. We conclude that she was not required to do so.[9]  There is no general requirement that a plaintiff exhaust state administrative or judicial remedies before she can pursue a claim under § 1983,[10] nor does the Medicaid Act or Louisiana law create an exhaustion requirement for Medicaid claimants.[11]  Louisiana's own statute providing for

---

[7] In a variation on its exhaustion argument, DHH argues that the district court lacked subject matter jurisdiction because Romano had an adequate remedy at law—judicial review in state court—which precludes her from seeking permanent injunctive relief.  But, as we explain below, Romano was permitted to bring her § 1983 claim regardless of whether she had exhausted her state judicial remedy.

[8] Other circuits have concluded that a Medicaid claimant is not required to exhaust the state's fair hearing process prior to bringing a § 1983 action.  *See, e.g.*, *Roach v. Morse*, 440 F.3d 53, 56–58 (2d Cir. 2006); *Alacare, Inc.-North v. Baggiano*, 785 F.2d 963, 965–69 (11th Cir. 1986).

[9] At least one other circuit has reached the same conclusion.  *See Alacare*, 785 F.2d at 969–70.

[10] *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982).

[11] It is true that provisions of the Medicaid Act incorporate by reference 42 U.S.C. § 405(g) and (h), the judicial review provisions of the Social Security Act, which have been interpreted as requiring exhaustion of administrative remedies before pursuing an action in federal court.  *See Mich. Ass'n of Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 497 (6th Cir. 1997).  But those provisions, and the cases DHH cites that interpret them, involve review of decisions of the Secretary of Health and Human Services—a federal agency—regarding provider eligibility.  Those provisions are inapplicable here where a Medicaid claimant seeks review of a state agency decision.

judicial review in state court makes clear that it is not "limiting . . . utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law."[12]

DHH also argues that the district court cannot review a state-level administrative adjudication. Citing to *Elgin v. Department of the Treasury*,[13] DHH asserts that Romano is trying to present claims that "must be resolved through the statutorily required administrative process." Here, unlike in *Elgin*, the statute in question is not a federal statute that explicitly lays out the exclusive parameters for judicial review. Instead, the Medicaid statute delegates the administrative review process to the states. Louisiana provides for review by an ALJ, and then for judicial review in state district courts. Despite the availability of state court review, the statute providing for that review explicitly states that it does not limit "utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law."[14] Moreover, neither Congress nor Louisiana has specified any exclusive forum for judicial review of Medicaid claims. We therefore conclude that the mere availability of judicial review in state court does not preclude Romano from pursuing her claim in federal court, nor does it divest the federal district court of its jurisdiction to consider the matter.

**B.**

We now turn to DHH's argument that the district court erred in denying its motion to dismiss because Romano did not have a private right of action that

---

[12] LA. REV. STAT. ANN. § 49:964(A)(1).

[13] 132 S. Ct. 2126 (2012).

[14] LA. REV. STAT. ANN. § 49:964(A)(1).

is enforceable under § 1983. We review *de novo* a district court's decision to deny a motion to dismiss for failure to state a claim.[15]

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[16] Section 1983 provides a cause of action for violations of federal statutes as long as the statute (1) creates an enforceable right and (2) does not foreclose enforcement under § 1983.[17] Romano argues that 42 U.S.C. § 1396a(a)(8) creates a right enforceable under § 1983.[18] Section 1396a(a)(8) requires that a state plan for Medicaid assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have an opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."[19] DHH has not even attempted to meet its burden of showing that "Congress specifically foreclosed a remedy under § 1983."[20] We therefore confine our analysis to the issue of

---

[15] *Equal Access*, 509 F.3d at 701–02.

[16] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983).

[17] *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990).

[18] Although Romano complained of a violation of her rights under 42 U.S.C. § 1396a(a)(3), (a)(8), and (a)(10)(A)(ii)(I), and the district court found that all three sections were redressable under § 1983, it relied only upon § 1396a(a)(8) in granting Romano's motion for summary judgment. Accordingly, we evaluate only whether § 1396a(a)(8) provides a cause of action under § 1983.

[19] 42 U.S.C. § 1396a(a)(8).

[20] *Blessing*, 520 U.S. at 341. Other courts have indicated that Congress did not foreclose enforcement of the Medicaid Act under § 1983. *See Wilder*, 496 U.S. at 520–21 (finding "little merit" in the argument that "Congress has foreclosed enforcement of the Medicaid Act under § 1983"); *Sabree v. Richman*, 367 F.3d 180, 193 (3d Cir. 2004).

whether § 1396a(a)(8) creates a right enforceable under § 1983.[21]  We join the First, Third, and Eleventh Circuits and conclude that it does.[22]

In *Blessing v. Freestone*, the Supreme Court articulated a three-part test for determining whether a federal statute creates a right enforceable under § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.[23]

Five years later, in *Gonzaga University v. Doe,* the Supreme Court elaborated on the appropriate analysis for determining whether a statutory provision gives rise to a federal right.[24]  It made clear that nothing "short of an unambiguously conferred right" can support a cause of action under § 1983.[25] Relying in large part on *Blessing*, the *Gonzaga* Court provided several guidelines for determining when a statutory provision "unambiguously" creates a federal right.  The statute must be phrased in "explicit rights-creating terms"—"in terms of the persons benefitted."[26]  It must clearly confer an "individual entitlement" and have "an unmistakable focus on the benefitted class."[27]  A provision does not

---

[21] It is worth noting DHH does not actually address § 1396a(a)(8) anywhere in its brief.

[22] *Sabree*, 367 F.3d 180; *Bryson v. Shumway*, 308 F.3d 79 (1st Cir. 2002); *Doe v. Chiles*, 136 F.3d 709 (11th Cir. 1998).

[23] 520 U.S. at 340–41 (internal citations omitted); *see Wilder*, 496 U.S. at 509.

[24] 536 U.S. 273 (2002).

[25] *Id.* at 283.

[26] *Id.* at 284 (internal quotations omitted).

[27] *Id.* at 287 (internal quotations omitted).

confer an individual right when it "speak[s] only in terms of institutional policy and practice," or when it has an "aggregate focus" and is "not concerned with whether the needs of any particular person have been satisfied."[28]

Section 1396a(a)(8), which requires that a state plan for medical assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals," satisfies *Blessing*'s three-part test.  First, the reasonable promptness clause is clearly intended to benefit "eligible individuals," and accordingly Romano was the intended beneficiary of § 1396a(a)(8).  Second, the right to reasonably prompt assistance is not so "vague and amorphous" as to exceed the judiciary's competence.  That conclusion is supported by the Supreme Court's decision in *Wilder v. Virginia Hospital Association*.[29]  In *Wilder*, the Supreme Court concluded that 42 U.S.C. § 1396a(a)(13)(A), which requires reimbursement according to rates that a "State finds . . . are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities," is enforceable under § 1983.[30]  In so doing, it found that the provision was not so "vague and amorphous" as to be outside the judiciary's competence.[31]  It explained that "the statute and regulation set out factors which a State must consider in adopting its rates" and noted that while "the amendment gives the States substantial discretion in choosing among reasonable methods of calculating rates," that "does not render the amendment unenforceable by a court."[32]  "While there may be a range of reasonable rates,

---

[28] *Id.* at 288 (internal quotations omitted).

[29] 496 U.S. 498.

[30] *Id.* at 501–02.

[31] *Id.* at 519–20.

[32] *Id.* at 519.

there certainly are *some* rates outside the range that no State could ever find to be reasonable and adequate under the Act."[33]  Like the statutory provision at issue in *Wilder*, section 1396a(a)(8)'s requirement that "assistance shall be furnished with reasonable promptness to all eligible individuals" is not "so vague and amorphous that its enforcement would strain judicial competence."[34] Section 1396a(a)(8)'s accompanying regulations clarify the scope of the "reasonable promptness" duty.[35]  Finally, section 1396a(a)(8) "unambiguously impose[s] a binding obligation on the States," with its mandatory language that state plans "must" provide that medical assistance "shall" be furnished with reasonable promptness.[36]  For those reasons, we find that § 1396a(a)(8) meets the three-part *Blessing* test.

In addition, section 1396a(a)(8) meets the standards set forth in *Gonzaga*.[37]  Section 1396a(a)(8) is unmistakably focused on the individual.  It does not "speak only in terms of institutional policy and practice," nor does it have an "aggregate focus."[38]  We find support for that conclusion in this Court's decision in *Dickson v. Hood*.[39]  In that case, the panel held that 42 U.S.C. § 1396a(a)(10), which provides that "[a] State Plan must provide for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title, to all

---

[33] *Id.* at 519–20 (emphasis in original).

[34] The Eleventh Circuit has reached the same conclusion.  *See Doe*, 136 F.3d at 716–18.

[35] *See, e.g.*, 42 C.F.R. § 435.930(a)–(b); *id.* § 435.911(a).

[36] *Blessing*, 520 U.S. at 341.

[37] *See Sabree*, 367 F.3d at 189–90.

[38] *See Gonzaga*, 536 U.S. at 288 (internal quotations omitted).

[39] 391 F.3d 581 (5th Cir. 2004).

individuals" who meet certain eligibility criteria, is enforceable under § 1983.[40] Section 1396a(a)(10) contains language similar to that of § 1396a(a)(8). The panel explained that "[t]his is precisely the sort of 'rights-creating' language identified in *Gonzaga* as critical to demonstrating a congressional intent to establish a new right."[41] It pointed out that, rather than having an aggregate focus, the provision was "concerned with whether the needs of [particular individuals] have been satisfied."[42] Moreover, it elaborated, the provision is not directed at "systemwide administration," but instead "requires that health care and services must be provided to all eligible recipients under the age of twenty-one."[43] The panel even referenced the decisions of the First and Third Circuits concluding that § 1396a(a)(8) is enforceable under § 1983 and observed the similarity of the language in § 1396a(a)(8) and § 1396a(a)(10).[44]

In sum, for the reasons set forth above, we find that the "reasonable promptness" provision of § 1396a(a)(8) creates a private cause of action enforceable under § 1983, and the district court did not err in denying DHH's motion to dismiss.

## C.

In the alternative, DHH contends that the district court erred by not exercising *Burford* abstention.[45] "A district court's abstention ruling is reviewed for abuse of discretion. However, we review *de novo* whether the requirements

---

[40] *Id.* at 601–07.

[41] *Id.* at 603.

[42] *Id.* at 604 (quoting *Gonzaga*, 536 U.S. at 275) (alteration in original).

[43] *Id.*

[44] *Id.* at 604–05.

[45] *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

of a particular abstention doctrine are satisfied."[46]  In deciding whether to exercise *Burford* abstention, we weigh the following factors:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.[47]

None of these factors weighs in favor of abstention in this case.  The cause of action arises under federal law, there are no apparent issues of state law or local facts, the interest in proper application of federal Medicaid law is paramount, and there is no special state forum for judicial review.  Accordingly, the district court did not abuse its discretion in declining to exercise *Burford* abstention.

## III.

Because we find that Romano's claims were properly before the district court, we AFFIRM the judgment of the district court denying DHH's motion to dismiss.[48]

---

[46] *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 462 (5th Cir. 2012) (internal citations omitted).

[47] *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (internal quotations omitted).

[48] Romano also asks us to address the issue of attorneys' fees.  As the district court granted Romano's motion to extend the time to file a motion for attorneys' fees until 91 days after the issuance of a mandate on appeal, we leave this matter for the district court's resolution.