# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 26, 2014

Lyle W. Cayce
Clerk

No. 14-60111

TEXAS RIOGRANDE LEGAL AID, INCORPORATED, doing business as Southern Migrant Legal Services; MIGUEL ANGEL DE SANTIAGO-GARCIA,

> Plaintiffs - Appellants

v.

LES RANGE, in his official capacity as Executive Director of the Mississippi Department of Employment Security,

> Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 3:10-CV-406

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this case we are asked to decide whether certain provisions of the federal Wagner-Peyser Act and its implementing regulations (specifically, 29 U.S.C. § 49*l*-2 and 20 C.F.R. §§ 653.109(a), 653.110(a)) confer a right among

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60111

members of the public to obtain certain immigration records in the possession of state agencies. For the reasons that follow, our answer is no, and we therefore affirm the district court's dismissal of the case.

Under the federal government's H-2A visa program, certain employers may request H-2A visas for foreign nationals to perform temporary agricultural work in the United States. Plaintiff-appellant Texas RioGrande Legal Aid, Inc., which does business under the name "Southern Migrant Legal Services" (and which we hereinafter refer to as "Southern Migrant"), provides legal representation for temporary agricultural workers with H-2A visas.[1] Southern Migrant sent a letter, dated December 14, 2009, to the Mississippi Department of Employment Security, requesting "copies of all records" the state agency has, "with the exception of records relating to unemployment compensation benefits," regarding a particular Mississippi employer's "participation . . . in the federal H-2A visa program."[2] In a response dated June 9, 2010, the department declined the request because, it explained, the records sought were "confidential and privileged" under two provisions of the Mississippi Code, sections 71-5-127 and 17-5-131.[3]

---

[1] Plaintiff-appellant Miguel Angel de Santiago-Garcia is one of Southern Migrant's clients.

[2] There is no explanation in the record as to what precise records Southern Migrant believed the Mississippi Department of Public Security possessed, nor is there an explanation as to how Southern Migrant intended to use the records. Southern Migrant's letter said only that it "may need to use these documents in court or administrative agency proceedings."

[3] Section 71-5-127(1) provides:

> Any information or records concerning an individual or employing unit obtained by the [Department of Employment Security] pursuant to the administration of this chapter or any other federally funded programs for which the department has responsibility shall be private and confidential, except as otherwise provided in this article or by regulation. Information or records may be released by the department when the release is required by the federal government in connection with, or as

2

No. 14-60111

Southern Migrant filed this lawsuit on July 19, 2010, against defendant-appellee Les Range, the Executive Director of the Mississippi Department of Employment Security (whom we hereinafter refer to as "the State"), claiming that the Wagner-Peyser Act and regulations promulgated thereunder provide a federal right for it to receive the H-2A documents it requested and, therefore, contrary state law is preempted and without effect. The district court denied the federal right claimed and dismissed the case. Southern Migrant appealed.

We first address Southern Migrant's claim under 42 U.S.C. § 1983, which provides a judicial right of action against persons who, under color of state law, cause the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In other words, the statute "provides a mechanism for enforcing individual rights 'secured' elsewhere." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Southern Migrant claims that its purported right to receive all records in the possession, custody, or control of the State (except for unemployment benefits records) regarding a particular employer's participation in the H-2A program is secured by the Wagner-Peyser Act and certain regulations promulgated thereunder.[4] The Supreme Court has

---

a condition of funding for, a program being administered by the department.

Section 71-5-131 provides:

All letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the department or any of its agents, representatives or employees, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter shall be absolutely privileged . . . .

[4] Although there is no dispute that federal statutes may create private rights that are enforceable under § 1983, there is an interesting and difficult question that has divided courts as to whether agency regulations may do the same. *See S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771 (3d Cir. 2001); *Smith v. Kirk*, 821 F.2d 980 (4th Cir. 1987); *Johnson v. City of Detroit*, 446 F.3d 614 (6th Cir. 2006); *Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003); *Harris v. James*, 127 F.3d 993 (11th Cir. 1997); *Samuels v. District of Columbia*, 770 F.2d 184 (D.C. Cir. 1985). We do not decide this question because,

explained that, to confer a private right that is enforceable under § 1983, the federal law upon which the plaintiff relies must "unambiguously confer" the right claimed. *Id.* at 283. The federal law must be phrased in "explicit rights-creating terms." *Id.* at 284. *See generally Romano v. Greenstein*, 721 F.3d 373 (5th Cir. 2013); *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257 (5th Cir. 2008); *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697 (5th Cir. 2007); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581 (5th Cir. 2004).

Southern Migrant falls far short of showing that its purported right to have state agencies turn over all their records (except for unemployment benefits records) relating to the participation of particular employers in the H-2A program is "unambiguously conferred" by federal law. *See Gonzaga Univ.*, 536 U.S. at 283. The problem with Southern Migrant's argument is that the right it seeks to enforce is not included within the text of the statutes and regulations that Southern Migrant relies upon.[5]

As for the Wagner-Peyser Act, it is aimed at "the establishment and maintenance of a national system of public employment offices." 29 U.S.C. § 49. Southern Migrant directs us to provisions of the statute requiring the

---

for the reasons we explain, even assuming *arguendo* that regulations are capable of conferring rights that are enforceable under § 1983, it is clear that the regulations Southern Migrant relies upon in this case do not afford the claimed right to immigration documents.

[5] The State focuses its defense on whether the provisions of federal law upon which Southern Migrant relies create *any* rights at all. This view of the issue is too broad. The question is whether federal law provides the *specific* right Southern Migrant claims: the right to receive from the State all records it has (except for unemployment benefits records) relating to the participation of a particular employer in the H-2A program. *See Blessing v. Freestone*, 520 U.S. 329, 342 (1997) ("As an initial matter, the lower court's holding that Title IV–D 'creates enforceable rights' paints with too broad a brush. It was incumbent upon respondents to identify with particularity the rights they claimed, since it is impossible to determine whether Title IV–D, as an undifferentiated whole, gives rise to undefined 'rights.' Only when the complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights.").

No. 14-60111

Department of Labor to "oversee the development, maintenance, and continuous improvement of a nationwide employment statistics system." *Id*. § 49*l*-2(a)(1). That system, the statute mandates, must include certain statistical data relating to, for one example, unemployment rates. *Id*. § 49*l*-2(a)(1)(A)(i). But the statute says nothing about H-2A records, and Southern Migrant does not make a reasonable argument allowing us to construe the statute as providing the right it claims.

Southern Migrant focuses its argument in favor of a right to receive all H-2A records on 20 C.F.R. § 653.110(a), which requires state agencies to "disclose to the public" upon request "the data collected by State and local offices pursuant to § 653.109." Section 653.109 in turn provides, in the part upon which Southern Migrant relies, that state agencies shall:

> Collect data on MSFWs [migrant and seasonal farmworkers], including data on the number (1) contacted through outreach activities, (2) registering for service, (3) referred to agricultural jobs, (4) referred to non-agricultural jobs, (5) placed in agricultural jobs, (6) placed in non-agricultural jobs, (7) referred to training, (8) receiving counseling, (9) receiving job development, (10) receiving testing, (11) referred to supportive service, (12) receiving some service, (13) placed according to wage rates, and (14) placed according to duration. The State agencies also shall collect data on agricultural clearance orders (including field checks), MSFW complaints, and monitoring activities, as directed by ETA [the Employment and Training Administration of the Department of Labor]. These data shall be collected in accordance with applicable ETA Reports and Guidance Letters.

*Id*. § 653.109(a).[6]

---

[6] Under the regulations, migrant and seasonal farmworkers ("MSFWs") may be, but are not necessarily, foreign nationals working in the United States with H-2A visas. *See* 20 C.F.R. § 651.10 ("MSFW means a migrant farmworker, a migrant food processing worker, or a seasonal farmworker." "Migrant farmworker is a seasonal farmworker who had to travel

As an initial matter, these regulations refer to the collection and dissemination of "data." *See id.* (requiring state agencies to "[c]ollect data" on specified topics); *id.* § 653.110(a) (requiring state agencies to disclose "the data collected"). But Southern Migrant does not assert a right to raw data such as, for example, the number of migrant and seasonal farmworkers who filed complaints with state agencies. Rather, Southern Migrant seeks recognition of the right to *specific documents* that it believes the State may have in its possession. It is a stretch of language to read a regulation requiring the government to turn over specified categories of "data" as also requiring the government to turn over specific requested documents in the government's records. In fact, when Southern Migrant sent its letter of December 14, 2009 to the State, it did not ask for "data"—it asked for copies of the State's "records." Neither does Southern Migrant's complaint in this lawsuit refer to "data"—it too refers to the State's refusal to turn over its "records." That language—requesting "records"—seems more typical for a reference to government documents. For example, when Congress enacted the Freedom of Information Act ("FOIA"), which requires federal agencies to turn over documents in their possession, it did not require federal agencies to disclose their "data"—it required them to disclose their "records." *See* 5 U.S.C. § 552(a)(3)(A) (addressing "request[s] for records"). Among the 50 states and the District of Columbia, each of which has its own statute similar to the federal FOIA, requiring government agencies in their respective jurisdictions to disclose requested documents, 47 of the statutes refer to requests for agency

---

to do the farmwork so that he/she was unable to return to his/her permanent residence within the same day." "Seasonal farmworker means a person who during the preceding 12 months worked at least an aggregate of 25 or more days or parts of days in which some work was performed in farmwork, earned at least half of his/her earned income from farmwork, and was not employed in farmwork year round by the same employer.").

"records."[7]  If the Department of Labor had intended for 20 C.F.R. § 653.110(a) to require state agencies to turn over specific documents that are requested, as Southern Migrant argues, it could have drafted the regulation so as to cover requests for "records"—the usual nomenclature, which Southern Migrant itself uses—but it did not.

The distinction between disclosure of "data" and disclosure of "records" is apparent when contrasting 20 C.F.R. § 653.110(a), the regulation at issue, with 29 C.F.R. § 70.3, another Department of Labor regulation.  The latter declares that the department's "agency records" (sans exceptions) "will be

---

[7] *See* Alaska Stat. § 40.25.110 ("public records"); Ariz. Rev. Stat. § 39-121 ("public records and other matters"); Ark. Code § 25-19-105 ("public records"); Cal. Gov't Code § 6253 ("public records"); Colo. Rev. Stat. § 24-72-203 ("public records"); Conn. Gen. Stat. § 1-210 ("public records"); D.C. Code § 2-532 ("public records"); Del. Code tit. 29, § 10003 ("public records"); Fla. Stat. § 119.01 ("public records"); Ga. Code § 50-18-71 ("public records"); Haw. Rev. Stat. § 92F-11 ("government records"); Idaho Code § 9-338 ("public records"); 5 Ill. Comp. Stat. 140/3 ("public records"); Ind. Code § 5-14-3-3 ("public records"); Iowa Code § 22.2 ("public records"); Kan. Stat. Ann. § 45-218 ("public records"); Ky. Rev. Stat. § 61.872 ("public records"); La. Rev. Stat. § 44:32 ("public records"); Me. Rev. Stat. tit. 1, § 408-A ("public records"); Md. Code., General Provisions § 4-201 ("public records"); Mass. Gen. Laws ch. 66, § 10 ("public records"); Mich. Comp. Laws § 15.233 ("public records"); Miss. Code § 25-61-5 ("public records"); Mo. Rev. Stat. § 610.023 ("public records"); Neb. Rev. St. § 84-712 ("public records"); Nev. Rev. Stat. § 239.030 ("public records"); N.H. Rev. Stat. § 91-A:4 ("governmental records"); N.J. Stat. § 47:1A-1 ("government records"); N.M. Stat. § 14-2-1 ("public records"); N.Y. Pub. Off. Law § 84 ("records of government"); N.C. Gen. Stat. § 132-1 ("public records and public information"); N.D. Cent. Code § 44-04-18 ("public records"); Ohio Rev. Code § 149.43 ("public records"); Okla. Stat. tit. 51, § 24A.5 ("records of public bodies"); Or. Rev. Stat. § 192.420 ("public records"); 65 Pa. Stat. § 67.701 ("public records"); R.I. Gen. Laws § 38-2-3 ("public records"); S.C. Code § 30-4-30 ("public records"); S.D. Codified Laws § 1-27-1 ("public records"); Tenn. Code § 10-7-503 ("state, county and municipal records"); Utah Code § 63G-2-201 ("public records"); Vt, Stat. tit. 1, § 316 ("public records"); Va. Code § 2.2-3704 ("public records"); Wash. Rev. Code § 42.56.080 ("public records"); W. Va. Code § 29B-1-3 ("public records"); Wis. Stat. § 19.35 ("records"); Wyo. Stat. § 16-4-202 ("public records").

Two statutes refer to requests for "public writings."  *See* Ala. Code § 36-12-40; Mont. Code § 2-6-102.  One statute refers to "public information."  *See* Tex. Gov't Code § 552.021; *see also* N.C. Gen. Stat. § 132-1 ("public records and public information").  Only one statute, Minnesota's, refers to "government data."  *See* Minn. Stat. § 13.03.  Not only is Minnesota's statute a clear outlier, but it shows that "data" and "records" are not the same thing.  *See id.* (stating that "government data" "shall be public" and that "government entit[ies] shall keep records containing government data in such an arrangement and condition as to make them easily accessible for convenient use").

made promptly available to any person submitting a written request." 29 C.F.R. § 70.3. The point is, the Department of Labor knows how to make clear that a government agency's (here, its own) documents are available upon request, and it does so by requiring disclosure of "agency records." The reasonable inference is that, when the Department of Labor said in 20 C.F.R. § 653.110(a) that state agencies must disclose certain specified "data," it meant something different. In short, we are hesitant to construe the regulation's requirement for "data" disclosure as providing a right to request specific documents in the government's records.[8]

Even if we accept Southern Migrant's argument that "data" has the same meaning as "records" and likewise requires disclosure of specific requested documents, Southern Migrant's claim still fails. By their plain terms, the regulations at issue require disclosure of only certain specified data. *See* 20 C.F.R. § 653.110(a) (requiring disclosure of "the data collected by State and local offices pursuant to § 653.109"); *id.* § 653.109(a) (enumerating categories of data that state agencies shall collect). For example, the regulations provide that state agencies shall collect and disclose data on the number of migrant and seasonal farmworkers whom the agency succeeded in placing in agricultural jobs. *See id.* § 653.109(a)(5). But Southern Migrant doesn't seek data about job placement rates, nor does it seek any other category of data that is enumerated in the text of the regulations. Southern Migrant's broad demand for "*all records* in [the Mississippi Department of Employment

---

[8] Apparently aware of the shortcomings of its argument, Southern Migrant is less than fully forthright about the regulation's text. In one part of Southern Migrant's briefing, the attorneys tell us—quoting 20 C.F.R. § 653.110(a) in part only—that the regulation requires disclosure of state agency "records." *See* Appellant's Reply Br. 8-9. In another part, Southern Migrant tells us that the regulation requires disclosure of state agency "data and records." *See* Appellant's Br. 13. Neither is accurate. *See* 20 C.F.R. § 653.110(a) (requiring disclosure of "data").

Security's] possession, custody, or control, except for unemployment compensation benefits records, relating to the participation of [a particular Mississippi employer] in the H-2A visa program," Second Amended Compl. ¶ 6 (emphasis added), far exceeds the text of the regulations.

To be sure, certain data that the regulations require be collected are tangentially related to the H-2A program. For example, the regulations at issue require collection and disclosure of data on "agricultural clearance orders." *See id*. § 653.109(a). An agricultural clearance order is, in essence, an employer's request that the government advertise that the employer is hiring domestic agricultural workers. *See generally* 20 C.F.R. § 653.501. An employer's initial use of the agricultural clearance order process for domestic workers, however, is also a prerequisite to the employer's subsequent application for authorization to hire foreign workers through the H-2A program. *See id*. § 655.121(a)(1). In that sense, agricultural clearance orders are related—indirectly—to the H-2A program. Southern Migrant makes clear, however, that it is not asserting a right to agricultural clearance order data, but a different, broader right to have the State hand over *all* of its records (except for unemployment benefits records) regarding a particular employer's participation in the H-2A program. The statutes and regulations upon which Southern Migrant relies do not create such a right. *See Blessing v. Freestone*, 520 U.S. 329, 342 (1997) (stating that, under § 1983, it is "incumbent upon [plaintiffs] to identify with particularity the rights they claim").

Southern Migrant's preemption claim fails for the same reason.[9] Southern Migrant argues that, to the extent that Mississippi law allows the

---

[9] We assume without deciding that Southern Migrant has a right of action under the Supremacy Clause to seek the requested judicial declaration of preemption in this instance. *See Planned Parenthood of Hous. & Se. Tex. v. Sanchez,* 403 F.3d 324 (5th Cir. 2005).

No. 14-60111

State to withhold the H-2A documents that Southern Migrant requested in its December 14, 2009 letter, the state law is without force or effect because it is preempted by federal law, which requires disclosure of the documents.  For the reasons we have explained, however, Southern Migrant's argument that federal law creates a right to disclosure of the requested documents is meritless.  Therefore, the preemption claim collapses.[10]

The district court's dismissal of this case is AFFIRMED.

---

[10] We do not decide, of course, whether the relevant Mississippi statutes are in conformance with federal law in all possible respects.  Our decision is limited to the specific argument Southern Migrant has presented.